## Mitchell v. Commonwealth.

(Decided March 13, 1931.)

JOHN H. GILLIAM and C. H. BUSH for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE LOGAN— Reversing.

Appellant was convicted on an indictment charging him with the offense of false swearing. He was the owner of a farm in Christian county, and the house and some of the outbuildings burned under circumstances seemingly suspicious. He was insured. A. E. Scott, claiming to be a special agent for the department of fire prevention and rates, accompanied by E. H. Black, a private detective employed by the National Board of Fire Underwriters, went to see appellant, and they took with them Mr. Harton, the insurance agent of Hopkinsville through whom the insurance had been obtained. The appellant was interrogated by Mr. Scott and Mr. Black, and he made certain statements which it is claimed were reduced to writing in his presence by Mr. Black. Whether he signed this writing at the time and was sworn to its correctness is not clear from the testimony of Black, Scott, and Harton. They informed him that they would take the writing to the office of Harton in Hopkinsville, where it would be copied on a typewriter and a copy made for him, and that he could appear at that office and read the typewritten copy, sign it, and swear to it, and take the copy made for him. This he did not do. But within a few days Black, Scott, and Harton took the typewritten copy and proceeded to find appellant out in the country, where they claimed the affidavit was read to him, corrections made, and that he signed it and was sworn to it by Harton, who was a notary public.

In the affidavit was a statement to the effect that he purchased the farm where the fire occurred from M. D. Grubbs, and that he paid to Grubbs $800 in cash, assumed the payment of a note and mortgage against the farm for $600, and transferred to him a note for $500 executed to appellant by a man named Mudd, and a note for $1,250 executed to him by a man named Strickner.

The indictment charged that he swore falsely when he stated, in the affidavit, that he transferred the $500 note and the $1,250 executed to him by the parties mentioned to Grubbs, and he was convicted on the charge by the verdict of a jury.

His defense was that he did not know that any such statement was in the affidavit. His side of the matter as detailed by him was to the effect that Black and Scott represented themselves as adjusters who had come to settle his loss and that he went into details at their request, giving the history of his life for a few years previous to his loss, and that, in the course of his narration, he told them of having purchased a farm at Shakertown, a part of which he thereafter sold to Mudd and a part to Strickner, and explained some of the details of that transaction, but did not say that either of them had given him a note, or that he had transferred such a note to Grubbs. He also denied that he swore to the affidavit.

The record has so much that is irrelevant and immaterial that it is necessary to cull out of the mass of the whole that which is material and important. We have done so. We shall state what we find in the record requiring our consideration.

What has been said about the condition of the record is not intended as a criticism of the special judge who tried the case, because the record shows that he was careful in his efforts to protect all of the rights of the commonwealth and the defendant, and the immaterial matter in the record was forced upon him the same as it has been forced upon us. The attorney who has briefed the case in this court did not represent appellant on his trial, and the attorney who did represent him on the trial did so in a manner that protected all of his rights. Neither of them are responsible for the condition of the record. There are three questions that require consideration, if the consideration of all of them is made necessary to a proper determination of the questions involved on this appeal:

1. A demurrer was interposed to the indictment which was overruled.

2. The authority of Mr. Scott claiming to be a representative of the department of fire prevention and rates to inquire into the matters mentioned in the affidavit, and whether the statement in the affidavit for which appellant was indicted was something about which he was required to be sworn, or about which he could legally

be sworn, under the circumstances made to appear in the record.

3. Whether the statement in the affidavit that he turned over to Grubbs the note executed by Mudd and the note executed by Strickner, when in fact he did not turn these notes over, was false within the meaning of the law, when in fact he turned over two other notes for substantially the same amount.

These three points will be disposed of in order. The indictment charges that the affidavit containing the false statements was made in an investigation conducted by A. E. Scott, a representative of the department of fire prevention and rates of the state of Kentucky. The indictment charges that the alleged false oath was made "in an investigation of setting fire to and burning of a barn and a house upon a farm in Christian County," and then follows the statement that the investigation was under the supervision of Scott. The question that arises is whether the indictment shows that Scott had any right or authority to make such an investigation. It is true that it is said that he was a representative of the department of fire prevention and rates of the state of Kentucky. Therefore it is necessary to examine the Statutes to ascertain whether there is any such department, and, if there is, whether the statement in the indictment is sufficient to show that Scott had authority to make the investigation. If there is any such department, it must be a name selected by the auditor himself, as there is no reference to a department of fire prevention and rates in the Statutes. There was such a department which was formerly Ky. St. 1915, section 762b-1 et seq. but that was repealed by chapter 19 of the Acts of 1916, which act was later repealed by chapter 16 of the Acts of 1920. Section 762b-1, Ky. Stats., vests in the auditor of public accounts all the authority, powers, duties, and privileges conferred by laws upon the fire marshal and the superintendent of fire insurance rates. The next section authorizes the auditor to employ deputies and assistants to assist him in the performance of the duties conferred upon him by the preceding section. Section 762b-6, Ky. Stats., places the duty on the auditor to enforce all laws and ordinances relating to the prevention of fires, the inspection of property, and regulations intended to prevent fires or lessen the number. He is specifically given authority to make an investigation of the cause, origin, and circumstances of fire and the detection and suppres-

sion of arson. Section 762b-7, Ky. Stats., confers further authority upon the auditor, and he is specifically authorized to investigate the cause, origin, and circumstances of every fire occurring within the commonwealth whereby property has been destroyed or damaged. Such investigation must be made through the auditor, or by assistants under his directions. The statement in the indictment is that Scott was a representative of the department of fire prevention and rates of the state of Kentucky. There is no allegation that he was representing the auditor, or that he had been appointed or designated by the auditor to make the particular investigation, or any investigation. The statement in the indictment that Scott was a representative of the department designated in the indictment was but a conclusion, even if there had been such a department. Facts must be stated in the descriptive part of the indictment which are sufficient to define, with accuracy, what was done and by whose authority. Com. v. Fitzpatrick, County Judge, 204 Ky. 485, 264 S. W. 1105, 1106. The mere statement that Scott was a representative of a department under a name set up by the auditor was not sufficient. There should have been the averment in the indictment that he was the representative of the auditor, and that he had been duly and legally appointed and qualified, and that the investigation which he conducted was for and on behalf of, the auditor. Com. v. Anderson, 151 Ky. 537, 152 S. W. 552.

It is further suggested that, if the indictment had averred facts sufficient to show that Scott was acting under the auditor, still it is defective, in that it shows, on its face, that the false statement alleged to have been made was not relevant to the investigation. One cannot be punished for false swearing unless the false oath was taken on a subject on which he could be legally sworn. Kerfoot v. Com., 89 Ky. 174, 12 S. W. 189, 11 Ky. Law Rep. 391; Com. v. Turner, 98 Ky. 526, 33 S. W. 88, 17 Ky. Law Rep. 925. If the false oath alleged to have been made was about a matter not relevant to the investigation, appellant was not charged with a public offense by the language of the indictment. It was held in the case of Com. v. Ransdall, 153 Ky. 334, 155 S. W. 1117, that, as the fire marshal had no authority to investigate fires except those occurring in the state, any oath administered to a person about a fire occurring outside of the state was unauthorized, and, as the person was not legally sworn, he did not testify on a subject about which he

could be required to give evidence. Com. v. Bradshaw, 210 Ky. 405, 276 S. W. 124.

In the case of Partin v. Com., 154 Ky. 701, 159 S. W. 542, it was held that on a trial for false swearing it is not necessary that the commonwealth should establish that the alleged false testimony was material, but it is necessary that it be established that it is relevant, and that the question of whether the testimony is relevant is a question for the court and not for the jury.

We do not determine whether the statement which it is alleged was false in the affidavit made by appellant was relevant to the investigation, as there is nothing in indictment to show that the investigation was legally made.

The other point suggested is that the statement alleged to have been falsely made could have been relevant in no event unless to show what appellant paid for the farm, and, as it made no difference what particular note he transferred to his vendor, that the whole case depends upon his having stated that he transferred notes executed to him by particular persons, and, as the price of the farm was not dependent upon the character of consideration, that he is not guilty if he transferred other notes. We do not determine that question, as that should only be determined when passing upon a charge made in an indictment that conforms to the requirements of the laws and Statutes.

Judgment is reversed, and cause remanded for proceedings not inconsistent with this opinion.