**William (Bill) HOLLAND, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

April 28, 1972.

A. E. Cornett, Hyden, for appellant.

Ed W. Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Atty. Gen., Frankfort, for appellee.

STEINFELD, Chief Justice.

Appellant William (Bill) Holland was convicted of the offense of false swearing and was sentenced to a term of one year in the penitentiary. Claiming that the trial court erred in overruling his motion to dismiss the indictment and in failing to grant him a directed verdict of dismissal, Holland appeals. We reverse.

On April 8, 1968, Holland was in charge of a tavern at which Vernon Smith was killed by gunshot. The following day, while in the sheriff's office, Holland was put under oath by a notary public before he was questioned by the county attorney who was investigating the killing. Holland made a comprehensive statement covering events up to and including the fatal shooting. He told that Patrick Asher shot Vernon Smith. At the trial of Asher for the murder of Smith, Holland testified, conversely, as to some of the material statements he had made during the investigation.

The false-swearing indictment fully and clearly narrated facts on which it was predicated. Relying on Riis v. Commonwealth, Ky., 418 S.W.2d 396 (1967), Holland contends that the indictment did not state a public offense. In part, KRS 432.-170 provides that if any person, when properly under oath, shall knowingly swear falsely on "* * * any subject in which he can legally be sworn * * *" he shall be punished. Holland does not claim that he was misled nor does he claim that failing to designate which of the two state-

ments was false was fatal.[1] He charges only that the indictment was inaptly drawn. We find that it met the requirements of RCr 6.10(2) and that it was sufficient to apprise Holland of the charges against him. Commonwealth v. Ransdall, 153 Ky. 334, 155 S.W. 1117 (1913); Dalton v. Commonwealth, Ky., 478 S.W.2d 734 (1972).

■ To support his argument that he was entitled to a directed verdict at the close of all the proof, Holland takes the "scatter-gun" approach. First he says that the Commonwealth showed that an oath was administered on both occasions; next it introduced the 1968 statements and excerpts from the trial testimony on the same subject; then "it rested its case upon what it considered two contradictory statements made under oath."

In Commonwealth v. Sesco, 279 Ky. 791, 132 S.W.2d 314 (1939), we wrote:

"While there is some authority to the contrary, the better rule seems to be that a conviction for perjury, or false swearing, cannot be sustained merely on the contradictory sworn statements of the defendant. The Commonwealth must prove which of the two statements is false, and must show that statement to be false by other evidence than the contradictory statement."

The Commonwealth having failed to comply with the rule we announced in Sesco, the judgment will have to be reversed.

Inasmuch as there may be another trial, we deem it appropriate to deal with other contentions of appellant.

Appellant contends that when he was interrogated by the county attorney he was not legally under oath because, he says, the notary public was not authorized to administer an oath for that purpose. He points out that there is no statute specifically granting that authority.

■ Civil Code, Section 549(1), provided that an affidavit could be made "In this State, before a judge of a court, a justice of the peace, notary public, examiner, clerk of a court or master commissioner." That section of the code was carried into the Civil Rules as Section 43.13(1), although in somewhat different language. Historically, it has been assumed that Civil Code, Section 549, authorized a notary public to administer an oath in matters unrelated to pending or anticipated court proceedings. Innumerable affidavits of varying types have been sworn to before notaries under the assumption that they were valid. Illustrations are affidavits of claimants on written contracts, to prove an open account, to obtain an absentee ballot, to authenticate challengers' credentials in elections, in connection with bulk sale of goods, to indicate descent of real property, to designate a process agent for a corporation, to assert a mechanic's or materialman's lien and to indicate that an advertisement has been published. Many state agencies have prepared forms for execution before notaries, such as motor vehicle registration, voter registration, income tax returns and declaration to seek public office.

From the foregoing, it appears to us that the recognition of the right of a notary public to administer oaths has become widespread, engrained, in common use, and has received the sanction of the people. In Nicholls v. Webb, 8 Wheat 326, 5 L.Ed. 628 (1823), it was said " * * * that the protesting of notes, if not strictly the duty of the notary, was in conformity to general practice, and was an employment in which he was usually engaged." We find here that the administering of the oath by a notary public before interrogation " * * * was in conformity to general practice * * *." We recognize the general rule has been that "The power to administer oaths is not incidental to the office of notary, and a notary has only such authority to administer an oath as is confer-

---

1. See Coulter v. Commonwealth, 154 Ky. 793, 159 S.W. 557 (1913); Roberson's

New Kentucky Criminal Law and Procedure, § 744, p. 950.

red on him by constitution or statute." 66 C.J.S. Notaries § 6(2), p. 615. In Owsley v. Commonwealth, Ky., 428 S.W. 2d 199 (1968), we wrote "So, we conclude * * * that a notary public is authorized to administer an oath to an affidavit." In the light of the illustrations we have related and the decisions in Anderson v. Commonwealth, Ky., 117 S.W.2d 364 (1909), and Owsley v. Commonwealth, supra, it is our opinion that the statute creating the office of notary public, KRS 423.010, when considered with the Rules of Civil Procedure, authorized the notary to administer the oath to Holland before his interrogation.

■ In support of his argument that the subject on which he gave his affidavit was not one on which he could be legally sworn, Holland cites Commonwealth v. Hinkle, 177 Ky. 22, 197 S.W. 455 (1917), a case in which the defendant was indicted for making a false affidavit. In that case we held that the proceedings were properly dismissed because the affidavit was signed by Hinkle to secure his release from custody. He swore that he would leave the county and not return. We said that " * * * it merely stated the purpose or voluntary promise of Hinkle to do something in the future which the court had no right to require of him." Holland sees an analogy; he says that he " * * * was not required to make a statement in the sheriff's office under the circumstances presented and he could not have been legally sworn." We agree that he was not obligated to make any statement, but he did so voluntarily.

The county attorney, advisably, has been called the "watch-dog" of the county. His duties encompass the prosecution of criminals. Cf. Adams v. Commonwealth, 129 Ky. 255, 33 Ky.Law Rep. 779, 111 S.W. 348 (1908), and KRS 69.210. In the performance of that duty he was authorized to conduct an investigation to gather evidence. The subject on which Holland was interrogated was one under investigation and concerning " * * * which he could be legally sworn * * *." Cf. Mitchell v. Commonwealth, 237 Ky. 849, 36 S.W.2d 649 (1931); Whitaker v. Commonwealth, Ky., 367 S.W.2d 831 (1963); KRS 432.170.

■ Holland argues that "in order to sustain a conviction for false swearing, the proof must clearly show that the accused not only knowingly and wilfully testified falsely but that at the time he knew the statements to be false." Holland points out that almost three years had passed by the time the second statement was made. This was a matter of defense. 70 C.J.S. Perjury § 51, p. 525.

The judgment is reversed.

All concur.