(56 South. 905.)

No. 19,160.

STATE ex rel. SMITH v. DARDENNE,
Registrar.

(Dec. 11, 1911.)

*(Syllabus by the Court.)*

ELECTIONS (§ 98*)—REGISTRATION OF VOTERS
—QUALIFICATIONS.

Where one undertakes to register as a voter under the educational clause of the Constitution, he must write out his application for registration papers without "assistance" or "suggestions," and must be intelligent enough to compute the number of years, months, and days that he has lived.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 93; Dec. Dig. § 98.*]

Appeal from Twenty-First District Court, Parish of Iberville; L. B. Claiborne, Judge.

Action by the State, on the relation of D. C. Smith, for a writ of mandamus against T. W. Dardenne, Registrar. From an order granting the writ, said registrar appeals. Affirmed.

J. H. Pugh and Walter Lemann, for appellant. Borron & Wilbert, for appellee.

BREAUX, C. J. This was an action for a mandamus.

Relator, D. C. Smith, alleging that Ben Roth has registered illegally, asks to have his name canceled from the registration roll of Iberville parish.

The relator charges that the respondent, Roth, succeeded in obtaining his registration papers only through the assistance and suggestions of the registrar and others.

Respondents filed exceptions to the affidavit made to plaintiff's petition, and, in their respective answers, they deny that the registrar sought to advise or assist the applicant for registration papers.

The registrar alleges that he administered the required oath and issued registration papers to the applicant in his private office.

The applicant for the papers, Roth, admitted that George Damare attempted to give him some assistance in registering and his obtaining registration papers.

### Brief Summary of the Facts.

The occupation of respondent, Roth, is that of farming. He is 37 years of age, and was 36 years old at the date that he registered.

There were several witnesses present when he registered, among them George Damare.

It appears that he asked the latter to show him where to insert two or three words in the printed affidavit.

Damare undertook to point out where he should insert the words.

But just then the registrar, who was off some little distance, busy at something else, requested Damare not to assist the applicant, as it was against the law.

This, it seems, was in a small office at the livery stable of the registrar.

The registrar testified that he received applicant's affidavit in his private office; that this was done by him in this and other instances for the convenience of those who came to register; that he had an office at the courthouse, where he had his papers, his books, and blanks.

This private office is two blocks away from the courthouse.

The registrar also testified that he wrote the words "Sworn to and subscribed by me," and thereby completed the affidavit, as in every other case of registration made before him.

He also says that he stopped Damare from prompting or coaching the applicant, and that, after he stopped Damare, the applicant moved aside and filled the blanks; that, although he was nervous, he finally succeeded in filling the blank as the registrar deemed sufficient and in accordance with the requirement.

The applicant, some few weeks afterward, one of his neighbors testified, talked to him and said that Damare had taught him all

that was needful to make a complete affidavit for registration.

But the applicant denies positively under oath that he ever said anything of the kind to this man, who swore that the applicant had made the statement.

Respondent, Roth, as a witness, was asked:

"Did anybody help you to figure out your age on that day? [that is, the day on which he registered].

"A. On that day Mr. Damare asked me how old I was. I said that I was 37 years old on the 18th day of last March.

"Q. Then what did you do?

"A. He counted how many months and days, and I put it down.

"Q. You say Mr. Damare counted the months and days?

"A. Yes; I said he counted up the months and days, and I put it down.

"Q. Then, after he counted up the months and days, you put it on the application?

"A. Yes, sir."

The law provides that any person may proceed by action in any court to compel the registrar of voters to cancel any registry. See Act 98 of 1908.

The point here has been directly decided. The decision is quite pertinent, and, without reversing it, it would be impossible to reach a different conclusion than that at which we have arrived. The facts are similar, and the certificate signed by the applicant, also. Lorio v. Sherburne, 122 La. 434, 47 South. 760.

In the prior decision, the court said that the question had been very much debated in the constitutional convention, and the law adopted after great consideration. Lorio v. Sherburne.

Again, it is evident that the applicant received "assistance" or "suggestions" (words of the Constitution, art. 197, § 3) from other persons in matter of his application.

The Constitution provides that the affidavit must be signed in the presence of the registrar without assistance from any one.

From the decision cited above we quote:

"Requires of the voter who registers under the educational clause, not only ability to read and write, but likewise intelligence enough to enable the applicant to compute at least the number of years, months, and days of his life."

After reading the testimony, it is very evident that the applicant did not come up to that standard.

This may be a hard law. With that we have naught to do.

It is therefore ordered, adjudged, and decreed that the writ of mandamus which issued is made peremptory, and the registrar of voters, T. Wallace Dardenne, is ordered to cancel and erase from the registrar's book of the Fourth ward of the parish of Iberville the name of Ben Roth, illegally thereon.