Conley Trigg **FIELDS,** Luther  Compton
and Kirby Smith, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 7053.

United States Court of Appeals
Fourth Circuit.

Argued Nov. 7, 1955.

Decided Dec. 27, 1955.

Stuart B. Campbell and Stuart B. Campbell, Jr., Wytheville, Va. (A. G. Lively, Lebanon, Va., on brief) for appellants.

Thomas J. Wilson, Asst. U. S. Atty., Harrisonburg, Va., and John Strickler, U. S. Atty., Roanoke, Va. (Benjamin F. Sutherland, Asst. U. S. Atty., Roanoke, Va., on brief) for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Conley Trigg Fields, Luther Compton and Kirby Smith were indicted and tried in the United States District Court for the Western District of Virginia for a violation of 18 U.S.C.A. § 241.

The verdict of the jury found Conley Trigg Fields, Luther Compton and Kirby Smith guilty. Their punishment was fixed at six months confinement for Fields, twelve months confinement for Compton and a fine of $1,000.00; and Smith was placed on probation. All of the three defendants who were found guilty have appealed to us.

The statute under which the indictment was found reads:

"§ 241. *Conspiracy against rights of citizens*

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

"They shall be fined not more than $5,000 or imprisoned not more than ten years, or both."

Three questions are before us on this appeal:

(1) Does the indictment state an offense under 18 U.S.C.A. § 241 and, if so, was the evidence sufficient to support the verdict of guilty?

(2) Was reversible error committed in the admission of evidence relating to the registration of certain voters and in the use of a statement given the F. B. I. by Mrs. Paris Street?

(3) Was there reversible error in the Court's instructions to the jury?

We think the indictment clearly stated an offense under 18 U.S.C.A. § 241. Clearly, the right of citizens to vote in the election of members of Congress, in accordance with applicable State laws, is a right secured by the federal Constitution. As was said by

Mr. Justice (afterwards Chief Justice) Stone in United States v. Classic, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368:

"Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted at Congressional elections. This Court has consistently held that this is a right secured by the Constitution."

■ See, also, United States v. Mosley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; United States Constitution, Article 1, §§ 2, 4.

We think, too, that the acts charged in the indictment clearly came within both the letter and spirit of 18 U.S.C.A. § 241. These acts served "to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States".

Said Mr. Justice Roberts, in United States v. Saylor, 322 U.S. 385, 389, 64 S.Ct. 1101, 1103, 88 L.Ed. 1341:

"If the voters' rights protected by § 19 are those defined by the Mosley case, the frustration charged to have been intended by the defendants in the present cases violates them. For election officers knowingly to prepare false ballots, place them in the box, and return them, is certainly to prevent an honest count by the return board of the votes lawfully cast. The mathematical result may not be the same as ' would ensue throwing out or frustrating the count of votes lawfully cast. *But the action pursuant to the conspiracy here charged constitutes the rendering of a return which, to some extent, falsifies the count of votes legally cast.* We are unable to distinguish a conspiracy so to act from that which was held a violation of § 19 in the Mosley case." (Italics ours.)

In Crolich v. United States, 5 Cir., 196 F.2d 879, 880, certiorari denied 344 U.S. 830, 73 S.Ct. 36, 97 L.Ed. 646, the indictment was sustained under the statute here involved and Circuit Judge Holmes stated:

"* * * that it was a part of said conspiracy to obstruct, prevent, and hinder, legally qualified citizens from voting in that election, and to cause disqualified persons to impersonate qualified citizens and to vote in their place; that it was a part of said conspiracy to cast false, forged and fictitious votes, at said primary election, with the intent that said illegal votes should be counted and thus should dilute, diminish, and destroy, the value and effect of votes legally cast, with the further purpose of causing the election officers to make a false return and certification of the results of said election."

Defendants rely on the Bathgate case decided March 4, 1918, United States v. Bathgate, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676. The distinction between that case and the case under consideration is quite simple. The Bathgate case rested on a charge of conspiracy to bribe voters. In the original Enforcement Act, bribery of voters was made a substantive offense. This section was repealed and the Court saw in this repeal a legislative intention to exclude this offense from the operation of 18 U.S.C.A. § 241. In the light of the Classic case, supra, there is small comfort for the defendants in the cases of Klein v. United States, 8 Cir., 176 F. 2d 184, certiorari denied 338 U.S. 870, 70 S.Ct. 145, 94 L.Ed. 533; United States v. Kantor, 2 Cir., 78 F.2d 710.

■ There is no merit in the contention of defendants that even if the indictment charged violations of laws, these should be excused under the doctrine of *de minimis*. This contention was effectively answered in Prichard v. United States, 6 Cir., 181 F.2d 326, 331, affirmed 339 U.S. 974, 70 S.Ct. 1029, 94

L.Ed. 1380, where Circuit Judge Simons crisply said:

> "The deposit of forged ballots in the ballot boxes, no matter how small or great their number, dilutes the influence of honest votes in an election, and whether in greater or less degree is immaterial. The right to an honest [count] is a right possessed by each voting elector, and to the extent that the importance of his vote is nullified, wholly or in part, he has been injured in the free exercise of a right or privilege secured to him by the laws and Constitution of the United States."

See also, United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341.

■■ The record discloses ample evidence to support the verdict of the jury. In the light of this verdict, this evidence must be viewed by us in the manner most favorable to the Government and all questions of the credibility of witnesses are for the jury. Carneal v. United States, 4 Cir., 212 F.2d 20, 22; Tucker v. United States, 4 Cir., 207 F.2d 561; Harding v. United States, 4 Cir., 182 F. 2d 524, certiorari denied 340 U.S. 874, 71 S.Ct. 118, 95 L.Ed. 636; Myres v. United States, 8 Cir., 174 F.2d 329, certiorari denied 338 U.S. 849, 70 S.Ct. 91, 94 L.Ed. 520; Pilgreen v. United States, 8 Cir., 157 F.2d 427; United States v. McDermott, 7 Cir., 131 F.2d 313, certiorari denied 318 U.S. 765, 63 S.Ct. 664, 87 L.Ed. 1137. And, since this is a conspiracy case, the agreement or understanding between the defendants to accomplish the illegal purpose must be inferred from the evidence in the record.

Out of a long and complicated record, we advert to certain high lights in the evidence which seem to support our conclusion. Though it was in effect denied by Compton, there was evidence that he was very active in working the mail vote in the 1952 election. There was evidence that there was a clear understanding between Compton and William Hendricks, a party Chairman, about this vote; that Compton paid Ralph Griffith to secure signed applications to vote from persons on a list supplied by Compton. The jury doubtless found it hard to believe that 40 out of the 48 mail ballots received by Compton would have been addressed to the voters in his care, even though he was a notary public, unless Compton actively brought this about by his own efforts.

There was considerable evidence of the illiteracy and ignorance of the voters and the manner in which their mail ballots were cast by Compton and Fields. Thus, Homer Street testified that Fields and Griffith brought the ballot to him and further: "Q. Do you say he (Fields) marked on the ballot when you had your hand on it? A. Yes, sir * * *.

Q. Do you know who it was you were voting for? A. I put confidence in him to help me." Somewhat similar testimony as to Compton was given by Bascom Musick.

Grover Sullivan and Mrs. Dewey Reedy testified that they did not vote in this election. The admitted possession of these two ballots by Compton and his inability to offer any explanation as to one of them raised a jury question as to whether Compton had illegally caused these votes to be counted. There was evidence that Kirby Smith, Acting Postmaster, delivered to Compton a number of mail ballots which were not addressed to the voters in care of Compton.

Not without significance is the fact that Smith withheld delivery of some 29 mail ballots at Compton's direction, though many of these addressees were patrons of Smith's post office and were well known to Smith. Smith testified on cross-examination:

> "Q. So, since it is in care of, of course you are entirely free to make delivery either to the person in whose care it is or to the person themselves for whom the mail is intended, right?

"A. I understand it that way.

"Q. Why wouldn't you make some attempt to deliver any of the mail in care of, to people who were patrons of your office and came there and called for mail?

"A. I don't have any 'excuse to offer.

"Q. In no single instance did you attempt to make delivery of any of this 'in care of' mail other than to Mr. Compton, did you?

"A. I don't recall it."

There was evidence that Fields, who had been working the mail vote in the Lebanon precinct, was sent into the Honaker precinct by Hendricks to help Compton; that Fields received from Compton the 29 mail ballots delivered on October 29 and other unvoted ballots which Compton had in his possession; that Fields was taken to these voters by Ralph Griffith, who had been used by Compton to get many of these voters to sign applications for mail ballots. There was evidence that Compton got Griffith to assist Fields in these operations in the Honaker precinct.

According to Fields, he was that day able to get into contact with, and also to vote, all of the persons, except one or two, for whom he had ballots, and the unused ballots, along with the ballots of those who had voted, were returned to Compton. The postal records and envelopes show that almost all of those ballots were mailed at Honaker and delivered in Lebanon the same day the 29 were delivered to Luther Compton. From the evidence as to the distances involved, inaccessibility of some of the homes, time required in balloting, and the employment of some of the voters, the jury was entitled to believe that it was an impossibility for Fields to have gotten in touch with more than 30 people on one week-day and to have gotten the ballots back through the mails to Lebanon on the same day, that some of those voters were never seen and that their ballots were illegally cast by Fields or Compton, or both.

■ There is no merit in the contention of defendants that Virginia Code, § 24–105 is a bar to this prosecution. This statute provides that the registration of a voter is conclusive after six months unless a petition is filed against the registration of the voter. Whatever effect this statute might have on the question of counting these votes, manifestly it could have no effect on the question of whether these defendants were guilty of the federal crime with which they were charged. There was evidence here, too, that some of these persons who were voted by defendants were never registered at all or were never registered in the precinct in which defendants caused their votes to be cast.

We waste little time over the contention of counsel for defendant that the Virginia election laws are directory. That argument is conclusively answered in the Classic and Mosley cases, supra.

■ The District Court permitted certain witnesses to be questioned as to whether or not they could read and write and to demonstrate whether or not they could mark their ballots for a particular candidate. Defendants urge that the Virginia statute concerning conclusiveness of registration makes such evidence inadmissible. One of the issues in this case was whether the defendants violated the Virginia election laws in rendering assistance to the voters in the marking of their ballots. Under Virginia Code, § 24–237, it is a misdemeanor for any person (with exceptions not here applicable) to "advise, counsel, or assist any elector, by writing, word, or gesture, as to how he shall vote or mark his ballot". If evidence by a voter that he was given assistance is admissible, evidence by a voter that he is incapable of voting without assistance is admissible.

■ Defendants also object to the cross-examination of Mrs. Paris Street, an adverse witness, regarding the statement she gave to the Federal Bureau of Investigation during the investigation which preceded this prosecution. Before portions of the statement were read

to Mrs. Street, counsel for defendants requested that the jury be instructed that the statement was to be introduced only for the purpose of affecting the credibility of the witness, if it did affect her credibility. When portions of it were read, defendants made no objection and at no time made any suggestion that it was not admissible. At the conclusion of the examination the District Court instructed the jury:

"* * * what the witness says here in Court is testimony and is her evidence which you should consider in your consideration of the case * * *."

Under these circumstances, we find no reversible error.

■ We think the District Court's charge to the jury to the effect that a conspiracy to cast illegal votes in the election contrary to the election laws of Virginia was a crime under 18 U.S.C.A. § 241, was, under the circumstances of this case, entirely proper. This seems to have been settled by the Classic, Yarbrough, Saylor and Mosley cases and the other cases previously cited. We find no fault with the portions of the charge dealing with Conspiracy.

■ Defendants complain of the refusal of the Court to charge the jury in accord with their request No. 15, which would have told the jury that under the law of Virginia, the name of an applicant for registration for voting does not have to be enrolled upon the registration book, if the applicant, in fact, and regardless of the decision of the registrar, performs all acts which are prerequisites for registration. Acceptance of this theory would destroy the very purpose of having a registration list. We think the District Court properly refused this request.

■ The final request of defendants reads: "(17) Also the Court is requested to charge: Sections 24–73, 24–105, 24–341, Code of Virginia." Code Section 24–73 requires notice to be given any person refused registration; Code Section 24–105 was concerned with the conclusive presumption if the petition is not filed against the registration; Code Section 24–341 dealt with the actual casting of the mail ballots and their deposit in the ballot box. In the light of what has been previously said in this opinion, we find no prejudicial error in the District Court's refusal to give this Charge. And, it is at least open to serious doubt whether this Charge, in the form asked, conforms to Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

Finally, in this connection, we are convinced that the Charge of the District Court, when read as a whole, correctly stated the law applicable to this case and was entirely fair to the defendants.

This was one of those cases which might be likened to a rope. Single strands, considered apart, might not be convincing; but, when these strands are knit together, there is indeed a formidable rope, quite strong enough to form a substantial support to the jury's verdict of guilty as to Fields, Compton and Smith.

After the jury's verdict, counsel for defendants made a somewhat impassioned plea for mercy on the score that the defendants had done nothing which they did not think was right, that there was no criminal intent, no moral guilt on their part. Rather striking was the reply of the District Judge:

"I can't agree with counsel. I think the verdict of the jury was amply justified. I think that the evidence is overwhelming and certainly convinces me beyond any doubt at all that the absentee voting law was grossly violated with knowledge and pursuant to a plan."

The judgment of the District Court is affirmed.

Affirmed.