Emile K. VENTRE, M. D.; Harry J. Kron, Jr., and Mrs. Geraldine Welch

v.

Ruby C. RYDER, Registrar of Voters for the Parish of St. Landry; and Mrs. Ruby T. Blanchard and James Lionel Joubert, Deputy Registrars of Voters for the Parish of St. Landry.

Civ. A. No. 7473.

United States District Court
W. D. Louisiana,
Opelousas Division.

Aug. 12, 1959.

Dubuisson & Dubuisson, Opelousas, La., W. M. Shaw, Homer, La., for plaintiffs.

J. Y. Fontenot, Opelousas, La., for defendants.

HUNTER, District Judge.

This action for a declaratory judgment and injunctive relief is brought by plaintiffs in behalf of themselves and of all persons properly qualified and registered to vote in St. Landry Parish, Louisiana.

The complaint, after detailing defendants' status as that of Registrar and Assistant Registrars, *alleges* that defendants and their predecessors in office registered thousands of persons to vote in congressional and other elections who did not meet the qualifications requisite for electors under Louisiana law; that defendants have engaged in a scheme or conspiracy to prevent plaintiffs and others from removing these illegal registrants from the rolls prior to the forthcoming state and congressional elections; that defendants have carried out this conspiracy by certain overt acts, including the refusal to permit plaintiffs to file more than a token number of affidavits of challenge and refusal to permit plaintiffs to photocopy the records of defendants' office.

On the day and hour set for hearing, defendants filed an answer setting up various defenses, including exceptions to the jurisdiction. Counsel for both sides agreed that these exceptions should be referred to the merits.

The facts are not in serious dispute and the Registrar was the only witness[1]. A number of issues concerning Louisiana law and the application and/or lack of application of that law by the Registrar are involved. In actions of this nature, mere pleaded conclusions asserting the violation of constitutional rights do not necessarily confer jurisdiction. Therefore, it is fitting and proper that we ascertain what the Louisiana law is and what defendants are accused of doing, have done, and are doing:

(1) The voter registration application provided by the Louisiana Constitution was devised as a test of the applicant's intelligence and literacy. That is why the Louisiana Constitution specifically provides that the form must be entirely written, dated and signed " * * * in the presence of the registration officer or his deputy, without assistance or suggestion from any person or any memorandum whatever, other than the form of application hereinafter set forth

[1]. The testimony of other witnesses was stipulated.

\* \* \*." Louisiana Registrars do not have the authority to assist persons applying to register in filling out these applications and/or to permit others to help them [2].

In recent years these two provisions of Louisiana law have been more honored in the breach than in the observance. The defendant Registrar and her predecessors in office (by custom and usage) have for many years rendered assistance and have not required the application blanks to be filled out in detail. This has resulted in the presence on the registration rolls of many voters not registered in strict compliance with the mandatory provisions of the statutes. Recently the defendants have adopted the policy of following the law in these particulars. The Registrar assures us that she will continue to do so. We have no reason to doubt the lady.

(2) (a) Plaintiffs, together with other voters of St. Landry, recently inaugurated a program of canvassing the registration rolls of the parish and challenging those persons allegedly not registered in accordance with the law. This so-called "clean-up" or "purge" is sanctioned by Louisiana law [3]. The method of removal of illegally registered voters set up in each of the two cited sections is unique in that it all but eliminates discretionary action on the part of the Registrar and

2. Article VIII, Section 1, La.Constitution of 1921 LSA, LSA–R.S. 18:31(3). Lorio v. Sherburne, 122 La. 434, 47 So. 760; State ex rel. Smith v. Dardenne, 129 La. 835, 56 So. 905; Thomas V. McElveen, Civil Docket No. 18,751, D.C., Washington Parish, La.; Reports and Opinions of Attorney General, 1942–1944, pg. 457; 1944–1946, pg. 202.

3. *LSA–R.S. 18:133. "Illegal registration or loss of right to vote; notice to registrant; erasure of name on failure to prove right"*

"Upon an affidavit signed and sworn to in duplicate before and filed with the registrar or his deputy by any two bona fide registered voters of the parish, to the effect that after reasonable investigation and on information and belief certain persons are illegally registered, or have lost their right to vote in the precinct, ward, or parish in which they are registered by reason of removal or otherwise, the registrar shall immediately, or, in any event, within forty-eight hours, notify the registrants by mailing to them postage prepaid at the addresses given in the precinct register, the duplicate copy of the affidavit, together with a printed citation requiring them to appear in person before the registrar or his deputy within ten days from date of the mailing of the duplicate affidavit and citation, which date shall be stated in the citation, and prove their right to remain on the registration rolls by affidavit of three bona fide registered voters in the form as provided in R.S. 18:132. The registrar shall immediately make a similar publication, as provided for in R.S. 18:132, and if the challenged registrants fail, within the same delays provided in that Section,. to prove their right to remain on the rolls, as in that Section provided, the registrar shall erase their names from the precinct register."

*LSA–R.S. 18:245. "Illegal registration or loss of right to vote; notice to registrant; cancellation of name on failure to prove right."*

"Upon a written affidavit signed and sworn to in duplicate before and filed with the registrar or his deputy by any two bona fide registered voters of the parish, to the effect that after reasonable investigation and on information and belief certain persons are illegally registered, or have lost their right to vote in the precinct, ward, or parish in which they are registered by reason of removal or otherwise, the registrar shall immediately, or, in any event, within forty-eight hours, notify the registrants by mailing to them postage prepaid, under P. O. Form 3547—Requested, at the addresses given in the registration records, the duplicate copy of affidavit, together with a printed citation requiring them to appear in person before the registrar or his deputy within ten days from the date of the mailing of the duplicate affidavit and citation, which date shall be stated in the citation, and prove their right to remain on the registration rolls by written affidavit of three bona fide registered voters in the form as provided in R.S. 18:132. The registrar shall immediately make a similar publication, as provided for in R.S. 18:132, and if the challenged registrants fail, within the same delays provided in that Section to prove their right to remain on the rolls, as in that Section provided, the registrar shall cancel their names from the registration records as provided by R.S. 18:135. Added Acts 1952, No. 415, § 2."

reduces her duties to those purely minis-terial in character. If the challenging affidavit is in proper form and states a; ground sufficient in law, the Registrar must proceed to take the prescribed ac-tion (Thomas v. McElveen, La.D.C., Parish of Washington, April 1959; the Flournoy case decided in Winn Parish on August 10, 1959). Here, the Registrar has refused to accept more than twelve or thirteen challenges a day and it would, at this rate (according to plaintiffs), take in excess of two years to "clean up" the rolls [4]. This action on the part of the Registrar denies to plaintiffs a legal right that they have under the Louisiana law. The Louisiana law which creates the duty on the part of the Registrar also creates a specific right in behalf of the plaintiffs to enforce that duty in the state court:

> LSA–R.S. 18:134. *"Refusal or failure of registrar to mail notice or erase name; summary court proceedings*
>
> "Should the registrar fail or refuse to mail the notice, to make the publication, or to erase a name when by the provisions of this Chapter it becomes his duty to do so, the person making the affidavit may, *by rule on the registrar returnable within forty-eight hours* after service, excluding Sundays and legal holidays, *apply to the district court for the parish*, without costs, and cause the registrar *to show cause why such should not be done.* The rule shall be tried in a summary way and by preference, in term time or in vacation, and the court shall immediately upon conclusion of the hearing enter its order in the premises. If the rule is granted, it shall fix a period of not more than three days from the date of the order within which the registrar shall comply therewith, and failing in which the registrar shall be held in contempt of court and punished accordingly."

(2) (b) Defendant is refusing to send out many of the challenges which were filed with her. This she has refrained from doing, she says, because she does not know who is or who is not an illegally registered voter. She is exercising discretion as to whether or not to send out the challenges at all. Again she is not carrying out the ministerial duties specifically required of her. This action, too, on the part of the Registrar and her assistants, denies to plaintiffs a legal right they have under the Louisiana law. The Registrar's duty in this connection under the law as it is written and as it has been interpreted, is ministerial, the performance of which may be required by the simple process of asking relief in the Louisiana state court under the provisions of LSA–R.S. 18:134, supra.

(3) The Louisiana law requires the Registrar to permit photocopying of the registration rolls when and if she is furnished a petition therefor signed by 25 qualified voters. The petition here was signed by 25 qualified voters (they were not challenged in accordance with law). The Registrar refused permission to photocopy and pegged her refusal on the proposition that the names on the petition did not identically conform with the same names on the registration application. (For example, Mrs. John N. Doe on the petition, and Mrs. J. N. Doe on the registration card.) Technically, her refusal was not improper. She states that when presented with a new petition with identical conformity that the permission to photostat will be granted. Public confidence demands public disclosure. The public has a right to know, and the law recognizes that.

Summarizing the Louisiana law and the Registrar's action, we find:

(a) That she and her assistants are denying to the plaintiffs certain rights that the plaintiffs have under state law to challenge registrants.

---

4. Defendant Registrar asserts that she does not have time to process more than twelve challenges per day. She has refused offers of stenographic assistance, and/or financial assistance to aid in the processing of challenges tendered by plaintiffs.

94

(b) That the Registrar and her assistants have in the past rendered assistance to prospective applicants and permitted others to do so.

(c) That the Registrar and her assistants have in the past not required the registration blanks to be filled out in minute detail.

(d) That as a result of the actions of the Registrar and her assistants, many voters who were not registered in accordance with law are presently on the rolls of St. Landry Parish, and will vote in state and congressional elections unless removed [5].

(e) As other courts have done, we disregard as mere conclusions the factually unsupported characterizations of the acts of defendant as conspiratorial and discriminatory. There is no conspiracy. Mrs. Ryder is the "boss"; the others follow her instructions. There is no discrimination. It is obvious that the Registrar is not in sympathy with the plaintiffs' efforts and that she is not going to carry out the provisions of LSA:R.S. 18:132 and 18:245, supra, unless compelled to do so by court order.

(f) The state law spells out a summary state procedure to force compliance with 18:132 and 18:245. Plaintiffs have chosen not to pursue their state remedies. They seek relief here, asserting that state courts cannot carry the assurance needed to restore the Registrar's confidence in her right to enforce the state registration laws and that only a firm declaration by a federal court that state registration laws are federal laws, and must be enforced, can restore confidence.

Jurisdiction

■■ Our consideration of the jurisdictional issue begins with two fundamental propositions, namely: (1) Under our constitutional system, the qualification of voters is a matter committed to the states, subject only to federal constitutional restraints prohibiting discrimination on a count of race, color, sex, etc. Pope v. Williams, 193 U.S. 621, 24 S. Ct. 573, 48 L.Ed. 817; (2) Clearly, the right of citizens to cast ballots and have them counted at congressional elections, in accordance with applicable state laws, is a right secured by the federal Constitution, and this right, unlike those carried by the Fourteenth and Fifteenth Amendments, is secured against the action of individuals as well as states [6].

Plaintiffs do not assert that they have been denied the right to register, but are asserting that others may exercise the right to vote who are not registered in conformity with applicable state statutes, and that they, the plaintiffs, have a federal constitutional right to have such registrants removed from the rolls. It is urged that this action encompasses two separate concepts of federal jurisdiction. The first of these is that the right to have these so-called unqualified registrants removed from the rolls is a federal right guaranteed by Article 1, Section 2 of the United States Constitution, and Amendment Seventeen thereof. The second is the Fourteenth Amendment with its guarantee of equal protection and prohibition against abridging privileges or immunities of citizens of the United States.

The Fourteenth Amendment

■ We do not comprehend the principle on which the state, acting through

5. It should be noted that the Court has been careful not to label these voters "as lacking the qualifications requisite for electors of the most numerous branch of the State Legislature." Under Louisiana law they have the right to vote unless challenged and removed in accordance with the express provisions of the Louisiana law heretofore discussed. Le Blanc v. Primeaux, La.App., 2 So.2d 274;

Perez v. Cognevich, 156 La. 331, 100 So. 444.

6. Art. 1, Sec. 2, par. 1, U.S.Constitution; Amendment XVII of the U.S.Constitution; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Fields v. United States, 4 Cir., 228 F.2d 544; and Tullier v. Giordano, 5 Cir., 265 F.2d 1, 3.

the Registrar, can here be said to deny plaintiffs the equal protection of the laws of the state when the very foundation of plaintiffs' claim is that the Registrar has disobeyed the authentic command of the state statute. Besides, it is clear that the wrongful interpretation or the misapplication of the Louisiana law would not give this Court jurisdiction or amount to a violation of the Fourteenth Amendment. *Discrimination alone can justify maintaining the action* and granting the relief sought under the Fourteenth Amendment [7].

Article 1, Section 2 of the Constitution of the United States, and the Seventeenth Amendment

Article 1, Section 2, par. 1:

"The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and *the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature.*" (Emphasis ours.)

The Seventeenth Amendment:

"The Senate of the United States shall be composed of two Senators from each state, elected by the people thereof, for six years; and each Senator shall have one vote. *The electors in each State shall have the qualifications requisite for electors of the numerous branch of the State legislatures.*" (Emphasis ours.)

Remedies for the abridgment or violation of these constitutional rights have been provided by the following statutory provisions of the Federal law:

(1) "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

\*  \*  \*  \*  \*  \*

(3) "To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

(4) "To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343.

(2) "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress." 42 U.S.C.A. § 1983.

Able counsel for plaintiffs vigorously insist that state registration laws are federal registration laws, being laws expressly adopted by the federal Constitution (Art. 1, Sec. 2, and the 17th Amendment), and that plaintiffs are vested with a federal constitutional right to have these state laws interpreted in the first instance and enforced in the first instance by federal district courts under the Civil Rights Acts, supra.

██ We all agree that Article 1, Section 2, of the Constitution and the Seventeenth Amendment do grant rights and privileges to each citizen of the United States, and the right of a citizen to register, cast his ballot, and have it counted at congressional elections, in accordance with applicable state laws, is such a right. But, do plaintiffs have a federal constitutional right under the provisions of law heretofore quoted to have state registration laws interpreted by the federal courts? Do they have a

7. Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497.

federal constitutional right to have these prospective voters (who may not have been registered in conformity with state law) removed from the rolls?

■ The Civil Rights Acts under which plaintiffs invoke federal jurisdiction have uniformly been given a narrow construction and a limited application by the Supreme Court of the United States [8]. We have neither the right nor the desire to deviate from this policy. The Civil Rights Acts are "not to be used to centralize power" [9], nor "stretched" to cover doubtful cases. To say the least, this is a doubtful case.

■ Plaintiffs, relying on Tullier [10] and Classic [11] insist that federal jurisdiction has already been extended beyond the facts of this case. I cannot agree. Tullier simply reiterates the well-established principle that one has a federal constitutional right to register and vote if he possesses the necessary qualifications therefor under the state law. Classic involved a criminal prosecution. The overt acts with which defendants were charged with the altering of 83 ballots cast for Congressional candidate "A", and 14 ballots cast for Congressional candidate "B", and the marking and counting of these ballots for Congressional candidate "C". There, the Court consistently held that a qualified voter in a congressional election has a federal congressional right not only to cast his ballot, but to have that ballot counted as cast. Everyone agrees that "cheating" and "ballot box stuffing" at congressional elections constitute a federal criminal offense (18 U.S.C.A. § 241).

The present case does not involve discrimination. It does not involve the denial of a right to register and vote, as in Tullier. It does not involve a criminal offense, as in Classic. The major premise of plaintiffs' argument is that "the guarantee that only persons having the qualifications requisite for electors in the state shall vote in federal elections is a right secured to plaintiffs by the United States Constitution." On that premise they then argue that this Court has jurisdiction to render a declaratory judgment defining the legal rights and relations of the parties under state registration laws, and to · issue an injunction against defendants ordering them to carry out certain particulars of these laws. Plaintiffs' argument assumes that the registrants whom they wish to challenge are not qualified electors. We have no right to indulge in such an assumption. If an election were held tomorrow, these voters could vote in state and federal elections, and could do so legally under the state law [12]. Their qualifications can only be attacked by "trecking" the state statute [13]. Plaintiffs' prayer for injunctive relief is in effect a request that this Court order the Registrar to comply with

8. Following is a chronological list of the illustrative Supreme Court cases: In re Slaughter-House Cases, 1872, 16 Wall. 36, 83 U.S. 36, 21 L.Ed. 394; Minor v. Happersett, 1874, 21 Wall. 162, 88 U.S. 162, 22 L.Ed. 627; United States v. Cruikshank, 1875, 92 U.S. 542, 23 L. Ed. 588; United States v. Reese, 1875, 92 U.S. 214, 23 L.Ed. 563; State of Virginia v. Rives, 1879, 100 U.S. 313, 25 L.Ed. 667; Hague v. C.I.O., 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423; United States v. Classic, 1941, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Snowden v. Hughes, 1944, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497; Screws v. United States, 1945, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Williams, 1951, 341 U.S. 70, 71 S.Ct. 581, 95 L.Ed. 758; Williams v. United States, 1951, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774; Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Collins v. Hardyman, 1951, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138.

9. Collins v. Hardyman, 5 Cir., 1959, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253.

10. Tullier v. Giordano, 265 F.2d 1.

11. United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368.

12. Opinions of the Attorney General, 1944–1946 pg. 568; Le Blanc v. Primeaux, La. App.1941, 2 So.2d 274; Perez v. Cognevich, 156 La. 331, 100 So. 444.

13. There are two provisions under which a purge of voters of an extremely summary nature may be made (Title 18, Sections 132 and 133, LSA–R.S.).

the state law by taking the first step respecting the processing of challenges that might result in the subject voter's name being stricken from the rolls. The provisions of the Louisiana law are explicit. Upon affidavit, the Registrar is required to immediately mail out the challenge, together with a citation requiring the Registrant to appear within ten days and prove his right to remain on the rolls by affidavit of three bona fide registered voters. If the registrant appears within a certain time and proof is submitted by him in the form of an affidavit signed by three bona fide registered voters of the parish, that such person is legally entitled to remain on the books of registration, his name shall so remain. But, if the registrant does not appear and make this proof within the period of delay allowed by law, his name shall be erased by the Registrar from the precinct register. Should the Registrar fail or refuse to mail the notice, to make the publication, or to erase a name when required by law to do so, the person making the challenging affidavit (in this case, the plaintiffs) may, by rule on the Registrar, returnable within 48 hours, apply to the state district court and cause the Registrar to show cause why such should not be done. This rule, under the state law, is to be tried in a summary way and by preference, in term time or in vacation.

We emphasize that the right of one to remain a qualified elector, once he is on the rolls, and the right of others to challenge, are rights secured by state statutes with special provisions for summary state court reviews. Here, plaintiffs ignore their state remedies and proceed directly in this Court.

▆ The holding of an election is a state matter regulated by state laws and conducted by state officials. There is no good reason why a federal court sitting in Louisiana (*in the absence of discrimination*) should render a declaratory judgment and/or grant injunctive relief based on the violation of these state laws. The question of whether or not a voter is a qualified elector is a state matter to be determined by state law and state courts.

If, as plaintiffs claim, state registration laws are federal laws, and consequently drawn into the "voracious mew" of federalism, then it necessarily follows that the federal courts, upon proper petition, have the duty to examine the registration blanks filled out by each and every registered voter in the United States and decide whether or not that registrant has complied with every state technicality. This cannot be the law. Only harm could ensue from such a policy which would require federal judges to become super registrars with the power to ride herd over state officials.

This Court has the highest respect for plaintiffs and their eminent counsel, but as we view their espousal here of the theory that federal courts should essay the rolls of super registrars, it is appropriate to say to them that one day, they may be reminded of Mary Shelley's terrified self-reproach in *Frankenstein*: "I behold the wretch, the miserable monster whom I have created." [14].

Plaintiffs' remedy lies in a re-invigoration of state responsibilities—not in inviting an undue incursion of federal authority into local duties.

We leave the parties to their remedies in the state courts of Louisiana. This Court has no jurisdiction of this case, and the case should be dismissed. It is.

---

14. Judge Lynne in Baldwin v. Morgan, D. C., 149 F.Supp. 224, 225.