UNITED STATES of America,
Appellant,

v.

Richard W. McLEAN, Reeves Millard Colville, Jr., John Herbert McCoy, Gordon Dean Hooper, Harold Maney, Max Harrison Cabe, Appellees.

No. 86–5012.

United States Court of Appeals,
Fourth Circuit.

Argued July 18, 1986.

Decided Jan. 12, 1987.

Craig C. Donsanto, Director, Election Crimes Branch (Charles R. Brewer, U.S. Atty., James R. Fitzner, Asst. U.S. Atty., Dept. of Justice, on brief), for appellant.

Robert B. Long, Jr., Martin Reidinger (Long, Parker, Payne & Warren, P.A., Ronald K. Payne, G. Ward Hendon, Fred Moody, Jack W. Stewart, Sean P. Deveraux, on brief), for appellees.

Before WIDENER, PHILLIPS, and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This appeal presents the question of whether a conspiracy to bribe voters by using the powers and duties of the precinct registrar to aid in the conspiracy may be prosecuted under 18 U.S.C. § 241 (1982) [1] and/or 18 U.S.C. § 242 (1982).[2] The district court found that *United States v. Bathgate*, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918), was applicable, and it prevented the use of these statutes in the present case because it involves bribery of

---

**1.** § 241. Conspiracy against rights of citizens.

If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life.

**2.** § 242. Deprivation of rights under color of law.

Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both; and if death results shall be subject to imprisonment for any term of years or for life.

voters. We agree with the district court, and we affirm.

## I

Defendant Richard W. McLean was a duly appointed and acting registrar of the Whittier Precinct in Swain County, North Carolina, during the 1984 primary election of April 8, 1984, the primary runoff election of June 5, 1984, and the general election of November 6, 1984. Reeves Colville, John McCoy, Gordon Hooper, Harold Maney, and Max Cabe were residents of Swain County and supported the nomination and election of certain candidates in the primary and general elections.

The precinct registrar is appointed by the County Board of Elections pursuant to North Carolina General Statute § 163–41 (1982), and has broad powers to conduct primary and general elections within the precinct. The oath of the registrar provides that he "will not in any manner request or seek to persuade or induce any voter to vote for or against a particular candidate or proposition." *Id.*

The indictment was returned on December 12, 1985, and contained twenty-five counts. Count 1 charged all six defendants with conspiracy in violation of 18 U.S.C. § 371 (1982)[3] to violate the federal vote-buying statute, 42 U.S.C. § 1973i(c) (1982).[4] Counts 2 through 21 were substantive violations of 42 U.S.C. § 1973i(c), and each of these counts involved the bribing of a voter named in the count. Each of these substantive counts was predicated on a separate act of vote buying in an election in which federal candidates were on the ballot.

Count 22 of the indictment, which is the primary issue of this appeal, charged that defendant McLean and his five codefendants, together with several unindicted co-conspirators, conspired together to corruptly exploit McLean's office as precinct registrar in aid of a scheme to dilute valid ballots with invalid ones illegally procured through voter bribery. Under the conspiracy, it is alleged that certain of the defendants and unindicted co-conspirators approached voters and solicited them to vote for the candidate defendants supported in the three elections of 1984; that these conspirators thereafter offered and gave money to the voters to induce them to vote and that defendant Colville furnished the funds with which the voters were paid; that the voters thus paid were escorted by the conspirators to the polling place in the Whittier Precinct and were there instructed to request assistance in voting from Registrar McLean. As precinct registrar, McLean had access to the voting booths, he was able to observe the bribed voters in the act of casting their ballots, and he could determine that said voters marked their ballots as they had been paid to do.

Based upon the above allegations, count 22 of the indictment charged all six defendants with conspiracy to deprive the citizens and voters of Swain County of rights guaranteed by the Equal Protection and Due Process Clauses of the fourteenth amendment through corruptly utilizing Registrar McLean's official position within the Whittier Precinct polling place in aid of the scheme to dilute valid ballots with invalid ballots secured through bribery. Counts 23, 24 and 25 of the instant indictment,

---

**3.** 18 U.S.C. § 371 U.S.C. Conspiracy to commit offense or to defraud the United States.

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**4.** (c) False information in registering or voting; penalties

Whoever knowingly or willfully gives false information as to his name, address, or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both....

which are also an issue in this appeal, charged Richard W. McLean with three substantive violations of 18 U.S.C. § 242 because of his alleged misuse of his official office in the three 1984 elections to aid in the casting of illegal votes "under color of law," in violation of the Equal Protection and Due Process Clauses of the fourteenth amendment.

After the indictment was returned, defendants moved to dismiss counts 22 through 25, which are brought under 18 U.S.C. § 241 and 18 U.S.C. § 242, on the grounds that they involve bribery of voters and as such are not covered by these Code sections as held in *United States v. Bathgate*, 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918). The judge found that *Bathgate* was controlling and dismissed counts 22 through 25. Thereafter, the United States Attorney moved for dismissal of counts 1 through 21 without prejudice, pursuant to Federal Rule of Criminal Procedure 48(a). This motion was granted, and the appeal followed.

## II

It is the position of the government that counts 22 through 25 do not charge voter bribery or conspiracy to violate federal laws dealing with voter bribery, but that these counts charge an intentional derogation by the defendants of the one-person-one-vote principle through corruption of the official office and powers of the precinct registrar to cast and count illegal votes. The defendants contend that since bribery of the individual voters was the key element of the scheme, the case is controlled by *United States v. Bathgate*, which held that bribery of voters is not covered by 18 U.S.C. § 241.

On May 31, 1870, Congress passed the Enforcement Act. It was entitled "An Act to Enforce the Right of Citizens of the United States to Vote in the Several States of this Union and for Other Purposes." 16 Stat. 140. Section 19 of the Enforcement Act declared in part:

that if at any election for representative or delegate in the Congress of the United States any person shall knowingly ... by force, threat, menace, intimidation, bribery, reward, or offer or promise thereof, or otherwise unlawfully prevent any qualified voter of any state of the United States of America, or of any Territory thereof, from freely exercising the right of sufferage; ... or compel or induce by any such means, or otherwise, any officer of an election in any such State or Territory to receive a vote from a person not legally qualified or entitled to vote ... or aid, counsel, procure, or advise any such voter, person, or officer to do any act hereby made a crime, ... every such person shall be deemed guilty of a crime, and shall for such crime be liable to prosecution in any court of the United States of competent jurisdiction....

By Act of February 8, 1894, 28 Stat. 36, Congress repealed certain sections of the Enforcement Act including § 19 thereof, which is quoted above and deals with federal elections. In the Act of February 1894, the Congress left in effect that part of the Enforcement Act which is now 18 U.S.C. § 241.

In 1918 the Supreme Court decided *United States v. Bathgate*. At that time, what is now 18 U.S.C. § 241 was known as § 19 of the Criminal Code, Rev.Stat., § 5508. The Court held that this section did not include a conspiracy to bribe voters at a general election within a state where presidential electors, a United States senator, and a representative to Congress were to be chosen. The court described the two counts in the indictment brought under § 19 (now 18 U.S.C. § 241) as:

And the two counts based thereon charge defendants with conspiring to injure candidates for presidential electors, the United States Senate and representative in Congress at the regular election in Ohio, November 7, 1916, also qualified electors who might properly vote thereat, in the free exercise and enjoyment of certain rights and privileges secured by Constitution and laws of the United States, namely—The right (a) of being a candidate (b) that only those duly quali-

fied should vote (c) that the results should be determined by voters who had not been bribed and (d) that the election board should make a true and accurate count of votes legally cast by qualified electors and no others. The indictment further alleged that the conspiracy was carried into effect as intended by purchasing votes of certain electors and causing the election boards to receive them and make inaccurate returns.

246 U.S. at 224, 38 S.Ct. at 270.

The *Bathgate* Court pointed out that Congress had seen fit to repeal the section of the Enforcement Act relating to bribery of voters and by so doing had clearly shown its intent that this statute was no longer applicable in such situations. The Court stated:

> Section 19, Criminal Code, of course, now has the same meaning as when first enacted as § 6, Act of 1870 (see Criminal Code, §§ 339, 341); and considering the policy of Congress not to interfere with elections within a State except by clear and specific provisions, together with the rule respecting construction of criminal statutes, we cannot think it was intended to apply to conspiracies to bribe voters. Bribery, expressly denounced in another section of the original act, is not clearly within the words used; and the reasoning relied on to extend them thereto would apply in respect of almost any act reprehensible in itself, or forbidden by state statutes, and supposed injuriously to affect freedom, honesty, or integrity of an election. This conclusion is strengthened by express repeal of the section applicable in terms to bribery and we think is rendered entirely clear by considering the nature of the rights or privileges fairly within intendment of original § 6.
>
> The right or privilege to be guarded, as indicated both by the language employed and context, was a definite, personal one, capable of enforcement by a court, and not the political, non-judicable one common to all that the public shall be protected against harmful acts, which is here relied on. The right to vote is personal and we have held it is shielded by the section in question.

*Id.* at 226–27, 38 S.Ct. at 271.

The United States Attorney argues that the conspiracy alleged in count 22 is not a conspiracy to bribe voters, which is covered by count 1 of the indictment, but is a conspiracy to deprive voters of their right to a fair election without having legal votes diluted by bribery-obtained votes through corruptly exploiting the official powers and duties of the precinct registrar. However, the purpose of using the power and position of the precinct registrar was to be sure that the bribed voters voted as they were paid to do. This is the same conspiracy set forth in count 1, and the language of count 22 simply focuses on the part to be played by McLean, the precinct registrar, in carrying out the general conspiracy to bribe voters. The indictment in *Bathgate* also referred to the rights and privileges secured by the Constitution that the election should be determined by voters who had not been bribed. This is the same basic claim as the present counts 22 through 25 and, *Bathgate* has determined that such an action may not be brought under the remnant of the Enforcement Act, 18 U.S.C. 241.

Appellant seeks support in *U.S. v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944); *Fields v. United States*, 228 F.2d 544 (4th Cir.1955); *United States v. Anderson*, 481 F.2d 685 (4th Cir.1973) affirmed on other grounds, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Olinger*, 759 F.2d 1293 (7th Cir. 1985), *cert. denied*, —— U.S. ——, 106 S.Ct. 120, 88 L.Ed.2d 98 (1985); and *United States v. Howard*, 774 F.2d 838 (7th Cor. 1985). These cases are distinguishable. In *United States v. Saylor*, the Court stated, "The inquiry is whether the provisions of § 19 embraces a conspiracy by election officers to stuff a ballot box in an election at which a member of the Congress of the United States is to be elected." 322 U.S. at 387, 64 S.Ct. at 1102. There was no claim in the indictment that there had been any

bribery of voters. *Saylor* arose from the November 3, 1942, general election in Harlan County, Kentucky, at which candidates for the United States Senate were in contest. The indictment charged the defendants under § 19 of the Criminal Code, then 18 U.S.C. § 51 and now 18 U.S.C. § 241, and asserted:

> that they conspired to injure and oppress divers citizens of the United States who were legally entitled to vote at the polling places where the defendants officiated, in the free exercise and enjoyment of the rights and privileges guaranteed to the citizens by the Constitution and laws of the United States, namely, the right and privilege to express by their votes their choice of a candidate for Senator and their right to have their expressions of choice given full value and effect by not having their votes impaired, lessened, diminished, diluted and destroyed by fictitious ballots fraudulently cast and counted, recorded, returned, and certified. The indictment charged that the defendants, pursuant to their plan, tore from the official ballot book and stub book furnished them, blank unvoted ballots and marked, forged, and voted the same for the candidate for a given party, opposing the candidate for whom the injured voters had voted, in order to deprive the latter of their rights to have their votes cast, counted, certified and recorded and given full value and effect; that the defendants inserted the false ballots they had so prepared into the ballot box, and returned them, together with other ballots lawfully cast, so as to create a false and fictitious return respecting the votes unlawfully cast.

*Id.* at 386, 64 S.Ct. at 1102.

In *Saylor* the Court discussed *Bathgate* and *U.S. v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 (1915), a box stuffing case. The Court explained:

> It is urged that any attempted distinction between the conduct described in the *Bathgate* case and that referred to in the *Mosley* case is illogical and insubstantial; that bribery of voters as badly distorts the result of an election and as effective-

ly denies a free and fair choice by the voters as does ballot box stuffing or refusal to return or count the ballots. Much is to be said for this view. The legislative history does not clearly disclose the Congressional purpose in the repeal of the other sections of the Enforcement Act, while leaving § 6 (now § 19) in force. Section 19 can hardly have been inadvertently left on the statute books. Perhaps Congress thought it had an application other than that given it by this court in the *Mosley* case. On the other hand, Congress may have intended the result this court reached in the *Mosley* decision. We think it unprofitable to speculate upon the matter for Congress has not spoken since the decisions in question were announced, and the distinction taken by those decisions has stood for over a quarter of a century. Observance of that distinction places the instant case within the ruling in the *Mosley* case and outside that in the *Bathgate* case.

322 U.S. at 389–90, 64 S.Ct. at 1103–04. The distinction is bribery of voters, which is the thrust of the entire indictment in the present case.

*United States v. Anderson, supra,* did not involve bribery, but involved a conspiracy by election managers to stuff the ballot box with false ballots from fictitious voters. *Fields v. United States, supra,* did not involve bribery, and the Court distinguished *Bathgate* as follows:

> Defendants rely on the Bathgate case decided March 4, 1918, *United States v. Bathgate,* 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676. The distinction between that case and the case under consideration is quite simple. The Bathgate case rested on a charge of conspiracy to bribe voters. In the original Enforcement Act, bribery of voters was made a substantive offense. This section was repealed and the Court saw in this repeal a legislative intention to exclude this offense from the operation of 18 U.S.C.A. § 241.

228 F.2d at 546. In *United States v. Howard, supra,* the indictment did not contain any allegation of bribery of voters as a part of the conspiracy.

In *United States v. Olinger, supra,* the indictment was brought under 18 U.S.C. §§ 241 and 371 and alleged a conspiracy to violate the constitutional rights of qualified voters in violation of § 241 and a conspiracy in violation of § 371 to violate 42 U.S.C. § 1973i(c) and (e). However, the illegal scheme in *Olinger* involved the stuffing of ballot boxes by using the votes of elderly and mentally handicapped residents of Monroe Pavillion, a residential facility in the 17th Precinct in Chicago. The election judges were instructed to ignore the wishes of these residents and to vote the straight Democratic party ticket for each of said residents. A Democratic party official paid some residents a small amount of money for their votes. In addition, precinct officials distributed ballot applications, along with the names of registered voters who had moved away or died, and election judges completed these ballot applications with the names of "phantom voters." It was charged that more than one-third of the votes cast in the 17th Precinct on election day were fraudulent. Certain voters were solicited and paid $2.00 per vote While bribery of voters was a part of the conspiratorial plan in *Olinger,* it was quite minor when compared with the overall effort of stuffing the ballot box.

In the present case, there were no fictitious ballots, no fraudulent applications, no voting of deceased persons, no improper use of blank ballots, no manipulation of elderly or mentally handicapped persons, and no voter was allowed to vote more than once. There is no claim that there was an improper count or a failure to properly certify the vote in the precinct. McLean is purely and simply a bribery case. The voters were qualified to vote, they voted only once, but their votes were purchased. This is bribery, and this is the situation addressed in *United States v. Bathgate.* Our court in *Fields* explained the *Bathgate* decision and the repeal of the original Enforcement Act by which Congress intended to exclude bribery from the operation of 18 U.S.C. § 241.

In 1943 the Supreme Court in *Saylor* explained the *Bathgate* holding that bribery was not covered by § 241. The Court concluded, "We think it unprofitable to speculate upon the matter for Congress has not spoken since the decisions in question were announced, and the distinction taken by those decisions has stood for over a quarter of a century." 322 U.S. at 389, 64 S.Ct. at 1104. Congress has now spoken to the question of bribery in the Voting Rights Act of 1965 and under 42 U.S.C. § 1973i(c) has provided penalties for bribery of voters. Congress has not shown any desire to disturb *Bathgate* nor has it amended 18 U.S.C. § 241 so as to include a conspiracy to bribe voters.

We conclude that the district judge was correct in applying *United States v. Bathgate* to the allegations contained in count 22 of the indictment which charges voter bribery and finding that such charge is outside the scope of § 241. Counts 23 through 25 of the indictment charge defendant McLean with violation of 18 U.S.C. § 242 based upon the same bribery scheme, and the district court was correct in dismissing these counts.

AFFIRMED.

WIDENER, Circuit Judge, concurring and dissenting:

I concur in part, but respectfully dissent in part from the majority's opinion.

I

I concur in the result reached by the majority as to counts 23, 24 and 25 because I do not believe the acts charged fall within the statute, 18 U.S.C. § 242.

II

I would ordinarily concur in the opinion of the majority applying *United States v. Bathgate,* 246 U.S. 220, 38 S.Ct. 269, 62 L.Ed. 676 (1918) because only the Supreme Court can overrule its own precedents.

*Thurston Motor Lines v. Jordon K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983). No other rule is workable in the orderly administration of justice.

In this case, however, I believe that the law has evolved since *Bathgate,* so that, while *Bathgate* may not have been overruled, *sub silentio,* its holding has been made necessarily less restrictive by later Supreme Court action. In *Anderson v. United States,* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974), the Supreme Court has more recently decided that a constitutional right exists to a honest election count. The Court stated: "[e]very voter ... whether he votes for a candidate with little chance of winning or for one with little chance of losing, has a right under the Constitution to have his vote fairly counted, without its being distorted by fraudulently cast votes. And whatever their motive, those who conspire to cast false votes in an election for federal office conspire to injure that right within the meaning of § 241." *Anderson* at 227, 94 S.Ct. at 2263–64.

I recognize that *Anderson* was a ballot box stuffing case and not a bribery case as here. The constitutional right, nevertheless, recognized by the Supreme Court in *Anderson* was that there was the right to an honest vote count. The indictment in the case at hand charged that the defendants conspired to violate that same constitutional right. The constitutional right to an honest count fits within the language of § 241, a "right $y(3)27 secured ... by the Constitution of the United States." Thus, I would allow that part of the prosecution to proceed.[1]

---

**1.** In *Anderson,* the challenged election was the Democratic primary election for selection of candidates for the United States Senate, United States House of Representatives, and state and local offices. False votes were cast in the local and Senate and House races. The case before us involves three elections, a federal primary election, a state primary election, and a general election for federal offices. No attempt is made in the indictment to allocate the fraud between the various elections. In affirming the opinion in *Anderson,* the Supreme Court based its opin-

---

ion upon the fact that the fraud that was the subject of the conspiracy did not distinguish in its object between the state, local and federal elections. The Court expressed no opinion of whether a conspiracy to cast false votes in a state or local election fit within 18 U.S.C. § 241. *Anderson* at 228, 94 S.Ct. at 2264. This court, however, expressly held in *Anderson* that such a conspiracy does fall within the terms of § 241. *United States v. Anderson,* 481 F.2d 685, 699 (4th Cir.1973).