## Commonwealth ▸ Anderson.

(Decided January 15, 1913.)

### Appeal from Scott Circuit Court.

1. Primary Elections—Canvassing and Certifying Returns.—Although the statute under which the State primary election of July 1st, 1911, was held, does not in terms provide that the votes cast in such primary in each county shall be canvassed, and the result certified, by the county committee of the party holding the primary, a fair interpretation of its provisions permits that meaning to be given it, where the duty of canvassing the votes, certifying the results and making proper returns thereof, to the State Central Committee is placed upon the county committee of each county by a resolution of the State Central Committee.

2. Primary Elections—Indictment Charging False Certification of Returns—Forgery—Defective Indictment.—An indictment which charged appellee with the crime of forgery by making, as chairman of the Democratic Committee of Scott County, a false and fraudulent tabulation and certification of the votes cast at the State primary election of July 1st, 1911, in the Turkeyfoot precinct of Scott County, was fatally defective because of its failure to allege that in performing the duty of canvassing and certifying the vote out of which the forgery grew, appellee acted in pursuance of a duty imposed and power conferred upon him by action of the Democratic State Central Committee. In view of the absence from the indictment of this essential allegation, the action of the circuit court in sustaining the demurrer filed by appellee to the indictment was not an error.

JAS. GARNETT, Attorney-General, M. M. LOGAN, Asst. Attorney-General, for appellant.

J. F. ASKEW, BRADLEY & BRADLEY, JAMES BRADLEY, B. M. LEE, L. F. SINCLAIR, R. F. PEAK, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The grand jury of Scott county returned in the circuit court of that county, against R. H. Anderson, an

indictment which, omitting the formal parts, is as follows:

"On the first day of July, 1911, the regularly organized, constituted and acting committee and governing authority of the Democratic party of the State of Kentucky held a primary election in the State of Kentucky, "County of Scott, and in the Turkeyfoot Precinct of the county of Scott at which election candidates for the Democratic nomination for the office of United States Senator from Kentucky and all the State officers of the State of Kentucky were voted for; that for at least forty days prior to said primary election the committee and governing authority of said party did give public notice of said primary election by posting and causing to be posted such notice at and on the Court House door in the City of Georgetown, County of Scott and in and on at least twenty other public places in said county; that on and after said day and within twelve months before the finding of this indictment the said R. H. Anderson, who was then and there the duly selected and acting chairman of the Democratic County Committee in and for the county of Scott, and by virtue of his said office a member of the Board for canvassing the returns and making certificate of said election and election returns to said committee and governing authority of the Democratic party of the State of Kentucky; while acting as such chairman and officer, he, the said R. H. Anderson, did unlawfully, wilfully, knowingly and feloniously make a false and fraudulent certificate of said primary election and election returns in and for the County of Scott and of and for the Turkeyfoot Precinct in said county in that the said Anderson willfully, knowingly, falsely and fraudulently to one John White, who was making up the tabulated statement, certificate and election return of the said election in and for said Scott county and of and for the several precincts in said Scott county and of and for the Turkeyfoot Precinct in said County, did call to and cause said White to tabulate that Edward J. McDermott, who was a candidate for the nomination for the office of Lieutenant Governor in said election had received one vote in said Turkeyfoot Precinct for the Democratic nomination for said office when in truth and in fact the election returns and certificate from said precinct from which said Anderson was calling showed plainly, and he, the said Anderson, then and there well knew that said election returns and certificate

from said precinct signed by the officers of election in said precinct showed plainly, that said Edward J. Mc-Dermott had received eleven votes in said precinct for the Democratic nomination for Lieutenant Governor in said Turkeyfoot Precinct in said election; and he, the said Anderson, did so as aforesaid, to said White, call and cause said White to tabulate that Jas. P. Edwards who was also a candidate for the Democratic nomination for the office of Lieutenant Governor in said Turkeyfoot Precinct in said election, had received thirty-nine (39) votes in said Turkeyfoot Precinct for the Democratic nomination for said office, when in truth and in fact the election returns and certificate from said precinct from which said Anderson was calling showed plainly, and he, the said Anderson, then and there well knew that the election returns and certificate from said precinct signed by the officers of election in said precinct showed plainly, that said Jas. P. Edwards had received only twenty-eight (28) votes in said precinct for the Democratic nomination for the office of Lieutenant Governor in said Turkeyfoot Precinct in said primary election, and after the said Anderson had so aforesaid caused said White to make up said false and fraudulent tabulation, he, the said Anderson, did sign and certify said false and fraudulent tabulation as and for a true certificate of election and election returns from said precinct and deliver and cause same to be delivered to the regularly organized, constituted and acting committee and governing authority of the Democratic party of the State of Kentucky and as and for the true certificate of election and election returns of and for the county of Scott in said Democratic Primary Election. And so as hereinbefore set out and charged, the said Anderson was guilty of "forgery by making a false and fraudulent certificate of a primary election and primary election returns" contrary to the "form of the Statute in such case made and provided and against the peace and dignity of the Commonwealth of Kentucky."

The indictment is based on Section 1581, Kentucky Statutes, which provides:

"Any officer or other person who shall wilfully alter, obliterate, or wilfully secrete, suppress or destroy the certified poll-book, returns or certificate of an election, wilfully and unlawfully alter the poll-book before it is certified; or any officer *who shall make or aid in making, or authorize the making-up of any false or fraudulent*

*poll-book or certificate of an election or election returns,* shall be deemed guilty of forgery, be confined in the penitentiary from one to five years, forfeit any office he then holds, and be disqualified from ever holding any office.''

The acts constituting the offense attempted to be set forth in the indictment, were, as alleged, committed by, the appellee as Chairman of the Democratic Committee of Scott County in the matter of canvassing and certifying the votes cast in the Turkeyfoot Precinct of that County, in the State Primary Election held by order of the State Central Democratic Committee, after due notice, for the nomination of Democratic candidates for the various state offices, and a candidate of the same party, for United States Senator.

The primary election in question was not held under the present primary election law, which was enacted by the General Assembly at the legislative session of 1912, but under the previously existing statute which, among other things declares (section 1550 Kentucky Statutes):

''A primary election within the meaning of this article, and as used in this chapter, is an election held within the State, county, city, district, or subdivision thereof, as the case may be, by the members of any political party, or by the voters of some political faith, for the purpose of nominating candidates for office.''

Section 1552 of the same statute provides:

''Any act or deed denounced an offense by the general laws of the State concerning elections shall also be an offense in all primary elections, and shall be punished in the same form and manner as is provided for the punishment of similar offenses by the general laws; and all the penalties and provisions of the general 'laws shall apply in such cases with equal force, and shall be as effective as though fully set out in this article.' ''

It will also be found that section 1560 contains the following provision:

''The officers of all primary elections, held under the provisions hereof, shall have the same powers and privileges as officers of regular state elections, and shall be subject to the same restrictions, limitations and conditions. Any act or deed denounced by general law as an offense in the case of officers of regular State elections, is hereby declared to be an offense in the case of officers of such primary elections, and shall be punished in the same form and manner as is prescribed by the general law.''

It will be observed that while section 1550, supra, provides for the holding of state primary elections for the nomination of party candidates, for state offices, it gives no information as to the manner in which or by whom the canvassing of the votes cast at such election shall be made and the results certified and returned, nor is such information elsewhere found in the statute. But section 1562 contains the following provision:

"Within such time as is provided by law in the case of State elections, and in the same manner, the election returns of all primary elections shall be deposited with the committee or governing authority of the political party under whose direction and control such primary election was held, at such place as the committee or governing authority shall designate at which to receive such returns, and any person who shall change or in any wise alter such returns shall be punished in the same form and manner as is provided by general law for the punishment of any person who changes or in any wise alters the returns of a regular State election."

Section 1563 provides:

"The duly authorized and constituted committee or governing authority in the county or district in which a primary election may be held hereunder is hereby empowered to count the votes received by all candidates in such primary elections, and to declare the candidate, or candidates, in cases where candidates, for more than one office are to be nominated, receiving the highest number of votes the nominee of such political party for the office for which he was voted for at such primary election. * * * But before entering upon a discharge of the duties set forth in this article, the committee or governing authority shall be sworn by some officer authorized by law to administer an oath to faithfully and honestly discharge the duties herein imposed; and the failure upon the part of any member of the committee or governing authority to discharge such duties faithfully and honestly shall be deemed a misdemeanor, and the persons so offending shall, upon indictment and conviction in the Circuit Court of the county or district, be fined not less than one hundred dollars nor more than five hundred dollars, and be imprisoned in the county jail not less than sixty days nor more than one year."

It will be further observed from a reading of the last two sections that neither contains a provision which in terms requires the committees of the counties to can-

vass the votes or certify the returns, where the election held was a state primary election, but the county committee of each county is empowered by section 1563 to canvass the votes and certify the results where the election held is a county primary election, and the district committee, where the election held is a district primary election. Section 1562 provides, however, that "the election returns of all primary elections shall be deposited with the committee or governing authority of the political party under whose direction and control such primary election was held, at such place as the committee or governing authority shall designate at which to receive such returns.

As section 1562 directs that the election returns of all primary elections shall be deposited "with the committee or governing authority of the political party under whose direction and control such primary election was held, at such place as the committee or governing authority shall designate at which to receive such returns," it is manifest that the election returns of the State primary in question should have been deposited with the Democratic State Central Committee, which was the governing authority at whose direction and under whose control the primary election was held; and in the absence of a provision of the statute directing by whom the vote in each county of the State, in a State primary election, should be canvassed, certified and returned, it was obviously the intention of the legislature that the Democratic State Central Committee should impose such duty upon the Democratic Committee of each county.

The statute should be liberally construed and, if it is not given this meaning, we would be forced to conclude that, although providing for the holding of State primary elections, they were made impossible by the failure of the statute to provide a means of ascertaining the results.

It is conceded in the argument by appellee's counsel that the duty of canvassing the votes cast in the State primary, certifying the result and making the election returns to the Democratic State Central Committee was, by a resolution adopted by the latter committee placed upon the several Democratic County Committees; and that appellee while engaged in the performance of that duty as chairman of the Democratic Committee of Scott County, committed the acts denounced by the indictment as

constituting the crime of forgery, but his guilt thereof is denied because the statute fails in express terms to require of him performance of the duty he undertook.

We do not concur in this conclusion, but must nevertheless hold that the indictment is fatally defective, because it fails to allege that the canvassing of the votes cast at the State primary ·election in the Turkeyfoot precinct of Scott County and the certifying of the result by appellee as Chairman of the Scott County Democratic Committee, out of which the forgery alleged to have been committed by him, grew, was done in pursuance of a duty imposed, and in the exercise of a power conferred upon him, by a resolution of the Democratic State ·Central Committee. In the absence from the indictment of an allegation of this fact, a necessary element of the particular offense charged was lacking, hence the demurrer was properly sustained.

Therefore the judgment is affirmed.