322 U.S. 385 (1944)
UNITED STATES
v.
SAYLOR ET AL.
No. 716.
Supreme Court of United States.
Argued April 28, 1944.
Decided May 22, 1944.
APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF KENTUCKY.[*]
Mr. Paul A. Freund argued the cause, and Solicitor General Fahy, Assistant Attorney General Tom C. Clark, and Messrs. Chester T. Lane and Edward G. Jennings were on the brief, for the United States.
Mr. Harry B. Miller for respondents.
MR. JUSTICE ROBERTS delivered the opinion of the Court.
These cases come here under the Criminal Appeals Act. The District Court sustained demurrers to indictments *386 for conspiracies forbidden by § 19 of the Criminal Code.[1] The section provides: "If two or more persons conspireto injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, . . ." they shall be punished.
As the cases present identical questions it will suffice to state No. 716. The indictment charged that a general election was held November 3, 1942, in Harlan County, Kentucky, for the purpose of electing a Senator of the United States, at which election the defendants served as the duly qualified officers of election; that they conspired to injure and oppress divers citizens of the United States who were legally entitled to vote at the polling places where the defendants officiated, in the free exercise and enjoyment of the rights and privileges guaranteed to the citizens by the Constitution and laws of the United States, namely, the right and privilege to express by their votes their choice of a candidate for Senator and their right to have their expressions of choice given full value and effect by not having their votes impaired, lessened, diminished, diluted and destroyed by fictitious ballots fraudulently cast and counted, recorded, returned, and certified. The indictment charged that the defendants, pursuant to their plan, tore from the official ballot book and stub book furnished them, blank unvoted ballots and marked, forged, and voted the same for the candidate of a given party, opposing the candidate for whom the injured voters had voted, in order to deprive the latter of their rights to have their votes cast, counted, certified and recorded and given full value and effect; that the defendants inserted the false ballots they had so prepared into the ballot box, and returned them, together with the other ballots lawfully cast, so as to create a false and fictitious return respecting the votes lawfully cast.
*387 The appellees demurred to the indictment, as failing to state facts sufficient to constitute a crime against the United States. The demurrer attacked the indictment on other grounds raising questions which, if decided, would not be reviewable here under the Criminal Appeals Act. The District Court decided only that the indictment charged no offense against the laws of the United States. This ruling presents the question for decision.
The appellees do not deny the power of Congress to punish the conspiracy described in the indictment. In the light of our decisions, they could not well advance such a contention.[2] The inquiry is whether the provision of § 19 embraces a conspiracy by election officers to stuff a ballot box in an election at which a member of the Congress of the United States is to be elected.
In United States v. Mosley, 238 U.S. 383, this court reversed a judgment sustaining a demurrer to an indictment which charged a conspiracy of election officers to render false returns by disregarding certain precinct returns and thus falsifying the count of the vote cast. After stating that § 19 is constitutional and validly extends "some protection at least to the right to vote for Members of Congress," the court added: "We regard it as equally unquestionable that the right to have one's vote counted is as open to protection by Congress as the right to put a ballot in a box." The court then traced the history of § 19 from its origin as one section of the Enforcement Act of May 31, 1870,[3] which contained other sections more specifically aimed at election frauds, and the survival of § 19 as a statute of the United States notwithstanding the repeal of those other sections. The conclusion was that § 19 protected personal rights of a citizen including the right to cast his ballot, and held that to refuse *388 to count and return the vote as cast was as much an infringement of that personal right as to exclude the voter from the polling place. The case affirms that the elector's right intended to be protected is not only that to cast his ballot but that to have it honestly counted.
The decision was not reached without a strong dissent, which emphasized the probability that Congress did not intend to cover by § 6 of the Act (now § 19) the right to cast a ballot and to have it counted, but to deal with those rights in other sections of the act. And it was thought this view was strengthened by the repeal, February 8, 1894,[4] of the sections which dealt with bribery and other election frauds, including § 4, which, to some extent, over-lapped § 6, if the latter were construed to comprehend the right to cast a ballot and to have it counted. Notwithstanding that dissent, the Mosley case has stood as authority to the present time.[5]
The court below thought the present cases controlled by United States v. Bathgate, 246 U.S. 220. That case involved an indictment charging persons with conspiring to deprive a candidate for office of rights secured to him by the Constitution and laws of the United States, in violation of § 19, and to deprive other voters of their rights, by the bribery of voters who participated in an election at which members of Congress were candidates. This court affirmed a decision of the district court sustaining a demurrer to the indictment, and distinguished the Mosley case on several grounds: first, that, in the Enforcement Act, bribery of voters had been specifically made a criminal offense but the section so providing had been repealed; secondly, that the ground on which the Mosley case went *389 was that the conspiracy there was directed at the personal right of the elector to cast his own vote and to have it honestly counted, a right not involved in the Bathgate case.
If the voters' rights protected by § 19 are those defined by the Mosley case, the frustration charged to have been intended by the defendants in the present cases violates them. For election officers knowingly to prepare false ballots, place them in the box, and return them, is certainly to prevent an honest count by the return board of the votes lawfully cast. The mathematical result may not be the same as would ensue throwing out or frustrating the count of votes lawfully cast. But the action pursuant to the conspiracy here charged constitutes the rendering of a return which, to some extent, falsifies the count of votes legally cast. We are unable to distinguish a conspiracy so to act from that which was held a violation of § 19 in the Mosley case.
It is urged that any attempted distinction between the conduct described in the Bathgate case and that referred to in the Mosley case is illogical and insubstantial; that bribery of voters as badly distorts the result of an election and as effectively denies a free and fair choice by the voters as does ballot box stuffing or refusal to return or count the ballots. Much is to be said for this view. The legislative history does not clearly disclose the Congressional purpose in the repeal of the other sections of the Enforcement Act, while leaving § 6 (now § 19) in force. Section 19 can hardly have been inadvertently left on the statute books. Perhaps Congress thought it had an application other than that given it by this court in the Mosley case. On the other hand, Congress may have intended the result this court reached in the Mosley decision. We think it unprofitable to speculate upon the matter for Congress has not spoken since the decisions in question were announced, *390 and the distinction taken by those decisions has stood for over a quarter of a century. Observance of that distinction places the instant case within the ruling in the Mosley case and outside that in the Bathgate case.
Our conclusion is contrary to that of the court below and requires that the judgments be reversed.
Reversed.
MR. JUSTICE DOUGLAS, with whom MR. JUSTICE BLACK and MR. JUSTICE REED concur, dissenting:
The question is not whether stuffing of the ballot box should be punished. Kentucky has made that reprehensible practice a crime. See Ky. Rev. Stat. 1942, § 124.220; Commonwealth v. Anderson, 151 Ky. 537, 152 S.W. 552; Tackett v. Commonwealth, 285 Ky. 83, 146 S.W.2d 937. Cf. Ky. Rev. Stat. 1942, § 124.180 (8). And it is a crime under Kentucky law whether it occurs in an election for state officials or for United States Senator. Id., § 124.280 (2). The question here is whether the general language of § 19 of the Criminal Code should be construed to super-impose a federal crime on this state crime.
Under § 19 of the Enforcement Act of May 31, 1870 (16 Stat. 144) the stuffing of this ballot box would have been a federal offense.[1] That provision was a part of the comprehensive *391 "reconstruction" legislation passed after the Civil War. It was repealed by the Act of February 8, 1894, 28 Stat. 36  an Act which was designed to restore control of election frauds to the States. The Committee Report (H. Rep. No. 18, 53d Cong., 1st Sess., p. 7) which sponsored the repeal stated:
"Let every trace of the reconstruction measures be wiped from the statute books; let the States of this great Union understand that the elections are in their own hands, and if there be fraud, coercion, or force used they will be the first to feel it. Responding to a universal sentiment throughout the country for greater purity in elections many of our States have enacted laws to protect the voter and to purify the ballot. These, under the guidance of State officers, have worked efficiently, satisfactorily, and beneficently; and if these Federal statutes are repealed that sentiment will receive an impetus which, if the cause *392 still exists, will carry such enactments in every State in the Union."
This Court now writes into the law what Congress struck out 50 years ago. The Court now restores federal control in a domain where Congress decided the States should have exclusive jurisdiction. I think if such an intrusion on historic states' rights is to be made, it should be done by the legislative branch of government. I cannot believe that Congress intended to preserve by the general language of § 19 the same detailed federal controls over elections which were contained in the much despised "reconstruction" legislation.
The Court, of course, does not go quite that far. It recognizes that bribery of voters is not a federal offense. United States v. Bathgate, 246 U.S. 220. But he who bribes voters and purchases their votes corrupts the electoral process and dilutes my vote as much as he who stuffs the ballot box. If one is a federal crime under § 19, I fail to see why the other is not also.
Congress has ample power to legislate in this field and to protect the election of its members from fraud and corruption. United States v. Classic, 313 U.S. 299. I would leave to Congress any extension of federal control over elections. I would restrict § 19 to those cases where a voter is deprived of his right to cast a ballot or to have his ballot counted. United States v. Mosley, 238 U.S. 383. That is the "right or privilege" the "free exercise" of which is protected by § 19. If it is said that that distinction is not a logical one, my answer is that it is nevertheless a practical one. Once we go beyond that point, logic would require us to construe § 19 so as to make federal offenses out of all frauds which corrupt the electoral process, distort the count, or dilute the honest vote. The vast interests involved in that proposal emphasize the legislative quality of an expansive construction of § 19. We should leave that expansion to Congress.
*393 That view is supported by another consideration. The double jeopardy provision of the Fifth Amendment does not bar a federal prosecution even though a conviction based on the same acts has been obtained under state law. Jerome v. United States, 318 U.S. 101, 105, and cases cited. Therefore when it is urged that Congress has created offenses which traditionally have been left for state action and which duplicate state crimes, we should be reluctant to expand the defined federal offenses "beyond the clear requirements of the terms of the statute." Id. I know of no situation where that principle could be more appropriately recognized than in the field of the elections where there is comprehensive state regulation.
NOTES
[*] Together with No. 717, United States v. Poer et al., also on appeal from the District Court of the United States for the Eastern District of Kentucky.
[1] 18 U.S.C. § 51.
[2] Ex parte Yarbrough, 110 U.S. 651, 657, 658, 661, 663; United States v. Classic, 313 U.S. 299, 314, 315.
[3] c. 114, 16 Stat. 140, as amended by c. 99, 16 Stat. 433.
[4] c. 25, 28 Stat. 36.
[5] United States v. Gradwell, 243 U.S. 476; In re Roberts, 244 U.S. 650; Hague v. C.I.O., 307 U.S. 496, 527; United States v. Classic, supra, 321.
[1] That section provided:

"That if at any election for representative or delegate in the Congress of the United States any person shall knowingly personate and vote, or attempt to vote, in the name of any other person, whether living, dead, or fictitious; or vote more than once at the same election for any candidate for the same office; or vote at a place where he may not be lawfully entitled to vote; or vote without having a lawful right to vote; or do any unlawful act to secure a right or an opportunity to vote for himself or any other person; or by force, threat, menace, intimidation, bribery, reward, or offer, or promise thereof, or otherwise unlawfully prevent any qualified voter of any State of the United States of America, or of any Territory thereof, from freely exercising the right of suffrage, or by any such means induce any voter to refuse to exercise such right; or compel or induce by any such means, or otherwise, any officer of an election in any such State or Territory to receive a vote from a person not legally qualified or entitled to vote; or interfere in any manner with any officer of said elections in the discharge of his duties; or by any of such means, or other unlawful means, induce any officer of an election, or officer whose duty it is to ascertain, announce, or declare the result of any such election, or give or make any certificate, document, or evidence in relation thereto, to violate or refuse to comply with his duty, or any law regulating the same; or knowingly and wilfully receive the vote of any person not entitled to vote, or refuse to receive the vote of any person entitled to vote; or aid, counsel, procure, or advise any such voter, person, or officer to do any act hereby made a crime, or to omit to do any duty the omission of which is hereby made a crime, or attempt to do so, every such person shall be deemed guilty of a crime, and shall for such crime be liable to prosecution in any court of the United States of competent jurisdiction, and, on conviction thereof, shall be punished by a fine not exceeding five hundred dollars, or by imprisonment for a term not exceeding three years, or both, in the discretion of the court, and shall pay the costs of prosecution."