Robert **HAAKENSON**, H. Paul Meloche,
Suzanne Moyer, Edward D. Cohn

v.

A. Russell **PARKHOUSE** et al.

Civ. A. No. 70–447.

United States District Court,
E. D. Pennsylvania.

April 20, 1970.

**930**

Sheldon W. Farber, Norristown, Pa., for plaintiffs.

Horace A. Davenport, Asst. Solicitor, Norristown, Pa., for defendants A. Russel Parkhouse, Frank W. Jenkins, Daniel T. Costello, Peter P. Stevens, Andrew Y. Michie, III, J. Philip Doud.

Bernard B. Naef, Allentown, Pa., for defendants Donald B. Hoffman, Harley Stewart, George Stahl, Margaret L. Reppert, Moulton Frantz.

Anthony R. Semeraro, Media, Pa., for defendants Frank A. Snear, Jr., Harry A. McNichol, Edward T. McEarlean, Mildred Friedkin.

Before HASTIE, Chief Judge, and LORD and HIGGENBOTHAM, District Judges.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs, citizens of the Commonwealth of Pennsylvania and residents of the counties of Montgomery, Lehigh, Delaware, and Philadelphia, seek injunctive relief restraining the defendant state election officials from issuing absentee ballots pursuant to P.L. No. 375 (Dec. 11, 1968) ("P.L. 375"), which amended the Commonwealth of Pennsylvania's Election Code of 1937, as amended, 25 Pa.Stat.Ann. § 3146.1 (Supp. 1970). The plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C.A. § 2201 (Supp.1970) that P.L. 375 violates the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution. Jurisdiction is invoked under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983 (Supp.1970).

Presently before us are several motions to dismiss filed by the defendants, some of which urge dismissal because plaintiffs have failed to exhaust their state remedies.

■■ At least one of the questions raised here was raised before the Pennsylvania Supreme Court in the case of Haakenson v. Parkhouse, No. 145, January Term, 1970, now dismissed by that court, on plaintiffs' motion, as moot. Even if we assume that plaintiffs have not exhausted their state remedies, that contention is directed only to the exercise of our equity jurisdiction and would not affect plaintiffs' request for a declaratory judgment. Zwickler v. Koota, 389 U.S. 241, 254, 88 S.Ct. 391, 19 L. Ed.2d 444 (1967); see Devita v. Sills, 422 F.2d 1172 (C.A. 3, 1970). Further, such exhaustion is not required under the Civil Rights Act. McNeese v. Board of Educ., 373 U.S. 668, 671–674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Kelly v. Butler County Bd. of Comm'rs, 399 F.2d 133 (C.A. 3, 1968).

All the motions to dismiss maintain that the complaint fails to state a claim under the Civil Rights Act. Plaintiffs' first contention is that P.L. 375 enlarges the class of absentee voters beyond the limits set out in Article VII, section 14 of the Pennsylvania Constitution, which provides:

"The Legislature shall, by general law, provide a manner in which, and at the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the State or county of their residence, *because their duties, occupation or business require them to be elsewhere* or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability, may vote, * * *." (Emphasis added.)

P.L. 375 provides that a "qualified absentee elector" is any qualified elector "who expects to be or is absent from the Commonwealth or county of his residence because his duties, occupation or business require him to be elsewhere * * *." 25 Pa.Stat.Ann. § 2602(w) (10) (Supp.1970), as amended, act 375, § 1 [1968] Pa.Laws 1012. However, P.L. 375 added the following definition:

> "The words 'duties, occupation business['] (sic) shall include leaves of absence for teaching or education, vacations, sabbatical leaves, and all other absences associated with the elector's duties, occupation or business, and also include an elector's spouse who accompanies the elector." 25 Pa.Stat. Ann. § 2602(z–3) (Supp.1970), as amended, act 375, § 2 [1968] Pa.Laws 1013.

Plaintiffs therefore argue that in violation of Article VII, Section 14 of the Pennsylvania Constitution,

> "* * * P.L. 375 permits civilian absentee votes to be cast by persons plainly *not* required to be absent from their polling places by reasons of duties, business and occupation, specifically including (1) vacationers, and (2) spouses who accompany them, without respect to whether their duties, occupation or business require them to be elsewhere." Complaint ¶ 6(B). (Emphasis in original.)

Regardless of the merits of this contention it of course presents only a question of state law. We pass over this argument for the moment and consider the federal constitutional questions raised in the complaint.

## I

Plaintiffs contend that the Election Code expressly provides a "right" to challenge prospective voters for lack of qualification, but that P.L. 375 creates "a special, arbitrary and privileged classification of voters not subject to adequate challenge, in violation of the Equal Protection and Due Process Clauses * * *." Plaintiffs' Brief p. 2. Plaintiffs claim to be members of the class of qualified and registered voters whose civil rights "are being unlawfully jeopardized, and * * * the effect of their votes is being diluted * * *." Complaint ¶ 2. They argue that the "purity" of elections held under the act "will be unlawfully jeopardized and all valid votes cast thereat will be diluted in their proper force and effect." Complaint ¶ 6. This argument is concerned solely with the restrictions which P.L. 375 has placed upon the state "right" of private parties, presumably candidates or their political organizations, to challenge an elector's qualifications before election day.[1] Plaintiffs argue that P.L. 375 has made it extremely difficult for private persons to challenge any number of absentee electors for lack of qualification to vote by absentee ballot, Complaint ¶ 6(C) (1), 6(C) (2) (d), or to vote *ab initio*, Complaint ¶ 6(C) (2) (c), and that the restrictions which impede this "right" violate the Fourteenth Amendment.[2]

### (A)

Plaintiffs first argue that P. L. 375 runs afoul of the Equal Protection Clause, relying on the cases which

---

1. Plaintiffs make no reference to the Election Code's provisions for election day poll watchers, appointed by candidates or their political parties, 25 Pa.Stat.Ann. §§ 2687(a), (b) (Supp.1970), who may challenge any vote cast by an absentee voter for failure to meet *any* of the qualifications for voting either by absentee ballot or *ab initio*. 25 Pa.Stat.Ann. §§ 3146.8(b), (e) (Supp.1970), as amended, act 375 § 8 [1968] Pa.Laws 1022.

2. The provisions of the act which plaintiffs argue render absentee voters practically impregnable from effective challenge by private parties include a requirement for posting a $10 "bond" for each challenge, 25 Pa.Stat.Ann. § 3146.8(f) (Supp.1970), as amended, act 375, § 8 [1968] Pa.Laws 1023, and various time strictures which allegedly leave insufficient time to scrutinize the voting lists. See 25 Pa.Stat. Ann. § 3146.2c (Supp.1970), as amended, act 375, § 7 [1968] Pa.Laws 1016–1019.

expound the "one man, one vote" doctrine. The teaching of Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), and its progeny [3] is that the Fourteenth Amendment prohibits a state from discriminating between classes of qualified voters so that a voter in one (geographic) class has his vote accorded less weight than a voter in another (geographic) class. Such "dilution" of voting power of members of one class of qualified voters violates the Equal Protection Clause. No such situation exists here. It is clear that all qualified voters[4] are equally affected if some unqualified persons are allowed to vote. The fact that these unqualified persons vote by absentee ballot does not create a class of voters favored over another class, since qualified absentee voters are subject to the same "dilution" as are qualified in-person voters. That is to say, that any "dilution" of voting power is suffered equally by all qualified voters through the random voting of some unqualified absentee voters. Plaintiffs nowhere allege that this statutory scheme is so porous that the number of unqualified electors whose votes will slip into the ballot box will amount to "ballot stuffing," *see* United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), and that such "ballot stuffing" will harm any particular class of qualified voters, *e. g.*, Democrats. Lacking such an allegation, this complaint utterly fails to state a claim of a denial of Equal Protection of the Laws.

**(B)**

■ Whether this statutory scheme which allegedly restricts the "right" of private parties to challenge absentee voters violates the Due Process Clause is a different question. The gist of plaintiffs' argument seems to be that due process limitations attach to the "right to challenge" and that this statute on its face violates Due Process. Complaint ¶ 6(C); Plaintiffs' Brief pp. 8–11. This argument is equally without merit.

First, plaintiffs do not argue that the statute's requirements for who may vote by absentee ballot violate any Federal constitutional provision,[5] only that they contravene the Pennsylvania Constitution. For the purpose of deciding these motions to dismiss we assume *arguendo* that the Fourteenth Amendment guarantees all qualified voters in a state a "fundamentally fair" election. Even with this premise, however, plaintiffs must still allege, as they do not, that this statutory scheme for absentee ballots does not ensure, as a matter of law, a fundamentally fair election. Nor have they alleged that the asserted "restrictions" on the "right" of private persons to challenge absentee voters' qualifications to vote *ab initio* permit widespread voter fraud. No such allegation is even implicit in the complaint since there is a significant failure to make any reference to the act's provisions for the screening of absentee ballot applications by county boards of election[6] and for poll watchers' challenges to absentee ballots at the time those ballots are

3. Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Avery v. Midland, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); Hadley v. Junior College Dist., 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45 (1970).

4. Plaintiffs claim, after all, to be members only of an aggrieved class of "qualified and registered voters." Complaint ¶ 2.

5. "The States have long been held to have broad powers to determine the conditions under which the right of suffrage may be

exercised * * *." Lassiter v. Northampton County Bd. Of Elections, 360 U.S. 45, 50, 79 S.Ct. 985, 989, 3 L.Ed.2d 1072 (1959) (upholding the validity of non-discriminatory literacy tests). Compare McDonald v. Board of Election Comm'rs, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) which upheld, against an attack on equal protection grounds, Illinois' restrictions on absentee voting by unsentenced inmates.

6. 25 Pa.Stat.Ann. § 3146.2(a), (b) (Supp. 1970), as amended, act 375, § 5 [1968] Pa.Laws 1013.

counted.[7] For all these reasons, paragraph six of the complaint fails to state a claim under the Civil Right Act, 42 U.S.C.A. § 1983 (Supp. 1970).

## II

Plaintiffs' other argument on the Federal constitutional level is that

"* * * P.L. 375 violates the Fourteenth Amendment, in Sec. 1308(f), by penalizing persons who wish to investigate the validity of votes by obliging them to pay a 'deposit' in the sum of Ten Dollars ($10) per challenge, *which deposit is not returnable unless the challenge is thereafter sustained,* after removing the most fundamental ground for challenge, i. e., qualification as an absentee voter under Article VII, Section 14 of the Pennsylvania Constitution, from possible consideration as a basis for challenge." Complaint ¶ 6(E). (Emphasis in original.)

Exactly how this "penalty" violates the Constitution is not clear, but plaintiffs reinforce their argument that it does by asserting that because the act limits judicial review, a challenger's chances of destroying "clearly unqualified ballots" are greatly reduced. Plaintiffs' Brief p. 12. This assertion is nowhere supported by any facts; plaintiffs simply assume *sub silentio* that administrative determinations that voters are entitled to vote by absentee will yield a significantly larger number of mistakes than a judicial determination, and that because P.L. 375 removes the right of judicial review of these determinations prospective challengers must expend more money to disqualify voters than they ought to be required to spend. Moreover, since the act preserves judicial review of the determination that a person is qualified to vote by absentee ballot, 25 Pa.Stat.Ann. § 3146.2b(a)

(Supp.1970), as amended, act 375, § 7 [1968] Pa.Laws 1016, only challenges to a voter's qualifications to vote *ab initio* are involved. Thus plaintiffs argue that because P.L. 375 imposes a $10 fee per challenge which is forfeited if the challenge fails, the act becomes "confiscatory" since prospective challengers must deposit and, by implication, lose very large sums of money in order to disqualify a meaningful number of absentee voters.[8]

However, this federal constitutional argument is dependent on plaintiffs' claim that P.L. 375 is violative of the Pennsylvania Constitution. Plaintiffs argue that the act imposes a penalty on prospective challengers by requiring a $10 fee which is "* * * not returnable unless the challenge is thereafter sustained, *after removing the most fundamental ground for challenge * * *.*" Complaint ¶ 6(E) (Emphasis added; emphasis in original deleted.) And the "most fundamental ground for challenge" is, according to plaintiffs, that the voter's occupation does not require him to be absent from the polling place on election day. *Id.* Thus, the force of the plaintiffs' argument that the act is "confiscatory" turns on the validity *vel non* of the act under the Pennsylvania Constitution: if the act is valid then prospective challengers lose the most important basis for challenging an absentee voter, namely, that he doesn't *have* to be absent on election day, and they are therefore not required to spend as much money on prospective challenges.

We have discussed this claim at length not because of any view we take on the merits of the claim, for we have none, but solely to demonstrate that the federal constitutional claim is presently hypothetical, depending as it does on the plaintiffs' claim under the state

---

7. See note 1 *supra.*

8. There is, of course, a latent argument that this $10 fee provision violates the Equal Protection Clause. Plaintiffs have not advanced this argument, perhaps because they do not, on this complaint, have standing to raise it.

constitution.[9] However, the Pennsylvania Constitutional provision which plaintiffs argue invalidates the act's absentee provision has never been construed by the Pennsylvania courts. Lacking any state construction of that section, any decision by this court would serve only as the flimsiest sort of prediction, and would constitute abrasive federal interference with the state courts' rightful role as interpreters of· Pennsylvania's most fundamental legal document. In addition, oral argument has confirmed our suspicion that plaintiffs' primary complaint is that P.L. 375 violates the Pennsylvania Constitution. For all that presently appears at this time, plaintiffs' claim of "confiscatoriness" may disappear after a resolution of their state claim. At the least, the force of their constitutional argument may be considerably diminished.

■ We have therefore concluded that this case is an appropriate one for invocation of the abstention doctrine despite the parties' failure to assert it. We think we are free to do so. *Cf.* Urbano v. Board of Managers of N.J. State Prisons, 415 F.2d 247, 254 n. 20 (C.A. 3, 1969). It is the basic teaching of Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), that federal district courts should avoid deciding a Federal constitutional question unnecessarily or prematurely by remitting litigants to the state courts for decision of potentially dispositive state law questions. In Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), the Court reversed a Three-Judge Court which had decided the plaintiffs' claims under both the Alaska Constitution and the Fourteenth Amendment, observing that a decision solely on the Alaska Constitutional provision "could conceivably avoid any decision under the Fourteenth Amendment." 397 U.S. at 87, 90 S.Ct. at 790. The provision of the Alaska Constitution on which the decision might turn had never been construed by the Alaska courts, but the Three-Judge Court considered that provision free from doubt. In this case, we can not say that the Pennsylvania courts will not decide that in a modern, mobile society in which many employers require their employes to take vacations, that vacations are not absences required by a person's occupation within the meaning of Article VII, Section 14 of the Pennsylvania Constitution. Accordingly, we have decided to abstain from any decision on this claim, at least until the parties receive a definitive construction of the state constitutional provision at issue before us. We will not retain jurisdiction, preferring to have the state courts consider the state law questions in the light which may be shed on them by the Federal constitutional claim. Government & C.E.O.C., CIO v. Windsor, 353 U.S. 364, 366–367, 77 S.Ct. 838, 1 L.Ed.2d 894 (1957).

### ORDER

And now, this 20th day of April 1970, it is ordered that the Complaint be and it hereby is dismissed.

---

9. *Compare*, Harman v. Forssenius, 380 U.S. 528, 536, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965) (abstention declined).