**Sylvia KAUFFMAN and Phyllis Gitlin**

**v.**

**Maurice S. OSSER, Thomas P. McHenry and Louis Menna, County Commissioners of Philadelphia County sitting as County Board of Elections, and Vincent Gaitley, Chief Clerk County Board of Elections.**

**Civ. A. No. 70-2432.**

United States District Court,
E. D. Pennsylvania.

Jan. 20, 1971.

Sheldon W. Farber, Norristown, Pa., for plaintiffs.

Edward G. Bauer, Jr., City Sol., John M. McNally, Jr., Asst. City Sol., Philadelphia, Pa., for defendants.

Before HASTIE, Circuit Judge, and LORD and HIGGINBOTHAM, District Judges.

## OPINION

JOSEPH S. LORD, III, District Judge.

Plaintiffs, registered voters who are enrolled as members of the Democratic Party, seek injunctive relief under 42 U.S.C. § 1983 [1] restraining the defendant state election officials from issuing and counting civilian absentee ballots in general elections [2] pursuant to Pub.L. No. 375 (Dec. 11, 1968), which amended the absentee voter provisions of the Commonwealth of Pennsylvania's Election Code of 1937, 25 Pa.Stat.Ann. § 3149.1 (1963), as amended, 25 Pa.Stat. Ann. § 3146.1 (Supp.1970). The plaintiffs also seek a declaratory judgment pursuant to 28 U.S.C. § 2201 (Supp. 1970) that P.L. 375 violates the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution.

The complaint was filed on September 4, 1970, and on September 24, 1970, defendants filed a motion to dismiss. A hearing was set for September 28, 1970, before the three-judge court which had been convened pursuant to 28 U.S.C. §§ 2281–2284. That hearing was adjourned after a short time in order to allow counsel to take certain depositions and to enter, if possible, into stipulations of fact. Depositions were taken, a stipulation was entered into, and on October 9, 1970, the case was submitted to the court as if on final hearing.[3]

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. 25 Pa.Stat.Ann. § 2751 (1963) provides that

   "The general election shall be held biennially on the Tuesday next following the first Monday of November in each even-numbered year. Electors of President and Vice-President of the United States, United States Senators, Representatives in Congress, the Governor, the Lieutenant Governor, The Secretary of Internal Affairs, the Auditor General, the State Treasurer and Senators and Representatives in the General Assembly shall be elected at the general election. Judges of the Supreme Court and the Superior Court may be elected at the general election."

3. Defendants never filed an answer in this case. However, we will treat the stipulation of counsel, in which the defendants' counsel denied certain averments of the complaint and admitted others, as an answer.

Article 7, sec. 1, of the Pennsylvania Constitution, provides that all citizens who satisfy certain age, residency, and length of citizenship requirements

"\* \* \* shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of voters as the General Assembly may enact."

However, while a person who fulfills the state's age, residency, and citizenship requirements and who registers [4] to vote is entitled to vote, in fact he can only do so if he conforms to the state's requirements relating to the receipt and casting of ballots.

Any person who is entitled to vote may vote at the polls if he appears at the appropriate polling place at the appropriate time, 25 Pa.Stat.Ann. § 3045 (1963), and signs a voter's certificate, 25 Pa.Stat.Ann. § 3050 (1963). In order to protect against the possibility that a person not entitled to vote may participate in the election, it is provided that a person voting at the polls

"\* \* \* May be challenged by any qualified elector, election officer, overseer, or watcher at any primary or election as to his identity, as to his continued residence in the election district or as to any alleged violation of the provisions of section 1210 of this act." 25 Pa.Stat.Ann. § 3050 (1963).

The election can be contested after the results are in on the ground that, *inter alia*, unqualified voters participated. 25 Pa.Stat.Ann. § 3326 (1963).

While all persons who are entitled to vote may vote at the polls, there is a sub-class of such persons the members of which are also authorized to receive and cast their ballots in a different manner. Article 7, sec. 14, of the Pennsylvania Constitution provides that

"The Legislature shall, by general law, provide a manner in which, and the time and place at which, qualified electors who may, on the occurrence of any election, be absent from the State or county of their residence, because their duties, occupation or business require them to be elsewhere or who, on the occurrence of any election, are unable to attend at their proper polling places because of illness or physical disability, may vote, and for the return and convass of their votes in the election district in which they respectively reside."

25 Pa.Stat.Ann. § 3146.1 (Supp.1970) includes civilians who will be absent due to their "\* \* \* duties, occupation or business \* \* \*" among the classes of persons entitled to vote by absentee ballot, and elsewhere in Pub.L. No. 375 (Dec. 11, 1968) it is provided that

"\* \* \* [t]he words 'duties, occupation, business [']'' (sic) shall include leaves of absence for teaching or education, vacations, sabbatical leaves \* \* \* and also include an elector's spouse who accompanies the elector." 25 Pa.Stat.Ann. § 2602(z–3) (Supp. 1970).

Those who ground their application for an absentee ballot on an absence due to "duties, occupation or business" generally must apply to the county election board not earlier than fifty days before the election and not later than 5:00 P.M. of the first Tuesday prior to the election. 25 Pa.Stat.Ann. § 3146.2a (Supp. 1970). This application form

"\* \* \* shall be signed by the applicant and shall include the surname and christian name or names of the applicant, his occupation, date of birth, length of time a resident in voting district, voting district if known, place of residence, post office address to which ballot is to be mailed, the reason for this absence, and such other information as shall make clear to the county board of elections the applicant's right to an official absentee ballot." 25 Pa.Stat.Ann. § 3146.2(e) (1) (Supp.1970).

The county election board decides whether or not to issue an absentee ballot on the basis of the information in the ab-

---

4. See generally 25 Pa.Stat.Ann. §§ 321–951 (1963).

sentee application and the permanent registration card. Not less than five days before the election the board must post a complete list of persons to whom absentee ballots have been issued. 25 Pa.Stat.Ann. § 3146.2c (Supp.1970). Approval of an application by the Board is a final and binding decision, except that challenges may be made on the ground that the applicant did not qualify as an absentee elector if such challenge is made by 5:00 P.M. on the Friday before the election. 25 Pa.Stat.Ann. § 3146.2b (Supp.1970).

Absentee ballots, enclosed in an envelope bearing a "voter's declaration,"[5] are received by the county election board and then distributed to the local election districts with the other election supplies. 25 Pa.Stat.Ann. § 3146.8 (Supp.1970). These absentee ballots are canvassed, along with all other votes, on election evening by district election officials, and at that time poll watchers have an opportunity

" * * * to challenge any absentee elector upon the ground or grounds (1) that the absentee elector is not a qualified elector; or (2) that the absentee elector was within the county of his residence on the day of the primary or election during the period the polls were open, except where he was in military service or except in the case where his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability; or (3) that the absentee elector was able to appear personally at the polling place on the day of the primary or election during the period the polls were open in the case his ballot was obtained for the reason that he was unable to appear personally at the polling place because of illness or physical disability." 25 Pa.Stat.Ann. § 3146.8(e) (Supp.1970).

All challenges to absentee applications and absentee ballots require a deposit of ten dollars, which sum is only refunded if the challenge is sustained or the challenge is withdrawn within five days after the primary or election. 25 Pa.Stat. Ann. § 3146.8(f) (Supp.1970).

In evaluating the contention that Pennsylvania's civilian absentee elector provisions (P.L. 375) deprive plaintiffs of their constitutional rights, we consider the following evidence which we find as facts.

1. Plaintiffs are citizens of the Commonwealth of Pennsylvania and residents of the City and County of Philadelphia, residing respectively at 13th Street and Lindley Avenue and at 3900 Ford Road; they are registered voters who are enrolled as members of the Democratic Party and who intend to vote in person at their proper polling places in the general election of 1970 and at succeeding elections thereafter.

2. Defendants Osser, McHenry and Menna, County Commissioners of Philadelphia sitting in their capacity as the County Board of Elections, and defendant Gaitley, the Chief Clerk of that Board of Elections, will act pursuant to the provisions of P.L. 375.

3. Approximately two to three percent of the registered voters of Pennsylvania will vote by absentee ballot in the November, 1970, election.

4. In the general election of 1969, the only general election yet held in Pennsylvania under the present absentee voter provisions, the Democratic candidate for statewide office received, in the County of Philadelphia 48.24% of all votes cast in person at the polls and 41.23% of all civilian absentee votes. In Montgomery County, the Republican candidate received a share of the absentee vote 7.67 percentage points higher than his share of the votes at the polls.

---

5. "Said form of declaration and envelope shall be as prescribed by the Secretary of the Commonwealth and shall contain among other things a statement of the electors (sic) qualifications, together with a statement that such elector has not already voted in such primary or election." 25 Pa.Stat.Ann. § 3146.4 (Supp. 1970).

5. Before the enactment of P.L. 375 approximately 35–50% of absentee applicants could be challenged successfully. The main ground for successful challenge was that the applicant—though entitled to vote—failed to qualify as an absentee elector.

6. (a) The county board of elections in Philadelphia is approximately one block removed from the county registration commission and can accommodate eight persons examining applications for absentee ballots.

(b) The county board of elections in Montgomery County is one floor above the county registration commission and can accommodate six persons examining absentee ballot applications.

(c) The county board of elections in Delaware County is across the corridor (approximately 60 feet) from the county registration commission and can accommodate five persons examining absentee ballot applications.

7. The Montgomery County Democractic Party is in financial distress and has no money to post the deposit required to challenge absentee ballots.

8. It is not uncommon for Democratic organizations throughout the Commonwealth to be in financial distress.

9. When reviewing applications for absentee ballots in Philadelphia, Montgomery, and Delaware Counties, the party worker has no opportunity to compare the applicant's signature with the one on the registration list.

10. A party worker can examine approximately 90 absentee applications in an eight-hour day.

11. There is a shortage of party personnel to get involved in the absentee challenge procedure. For example, five persons are the most that ever aided the Montgomery County Democractic Party.

12. The number of voting districts for the 1970 election in the County of Philadelphia is 1,753; in the County of Montgomery, 298; in the County of Delaware, 371.

13. Robert Haakenson, while a candidate for the office of Cheltenham Township Commissioner in the 1969 race, attacked P.L. 375 in a state court on the grounds that it violated the Pennsylvania Constitution insofar as it permitted vacationers and their spouses to vote by absentee. Subsequently, a theme of the campaign against Haakenson was that his opposition to P.L. 375 amounted to an attempt to disenfranchise voters.

I.

■ Plaintiffs first contend that, in violation of Article VII, sec. 14, of the Pennsylvania Constitution,

"* * * P.L. 375 permits civilian absentee votes to be cast by persons plainly *not* required to be absent from their polling places by reasons of duties, business and occupation, specifically including (1) vacationers, and (2) spouses who accompany them, without respect to whether their duties, occupation or business require them to be elsewhere." Complaint ¶ 6(B).

Regardless of the merits of this contention, it clearly presents only a question of state law: at no point do plaintiffs contend that the United States Constitution prohibits a vacationer or a vacationer's spouse from participating in an election. And we now decide that it is not appropriate for this court to exercise pendent jurisdiction over this state law issue. *See* United Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

II.

Plaintiffs next contend that the Election Code expressly provides for a "right" to challenge voters for lack of qualification, but that P.L. 375 creates a special arbitrary and privileged class of voters, *i. e.*, absentees, who are effectively immunized from private challenge. Plaintiffs have shown that certain features of P.L. 375 do indeed operate to immunize certain absentee voters from

private challenge. First, since the list of persons issued absentee ballots need only be posted five days before the election, since all challenges to absentee applications must be made at the county board of elections by 5:00 P.M. on the Friday before the election, and since examination of absentee ballots must be carried out at the county board, it is possible that not all absentee applications in Philadelphia and Montgomery Counties can be reviewed in light of time and space limitations. When this fact is coupled with the fact that the bases for challenges at the time of canvass are limited in scope, it becomes possible that not all absentee applicants can be challenged on the ground that they do not qualify as absentee electors. Second, challenges to absentee applicants on the ground that they do not qualify as absentees must generally be made *before* the election, leaving a candidate responsible for such challenges vulnerable to the charge that he is trying to disenfranchise citizens. Third, it seems clear that (1) the unavailability of the voting register at the county boards and (2) the unavailability of absentee applications at the district canvass do restrict the efficacy of the review of absentee applications and ballots. Fourth, it has been proved that the ten dollar deposit fee effectively prevents some Democratic parties from challenging absentee applications and ballots.

The issue now before the court is whether the aforementioned limitations and conditions on the right to challenge absentees violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment. In the case of Haakenson v. Parkhouse, 312 F.Supp. 929 (E.D.Pa.1970), which involved different plaintiffs and defendants, but many of the same issues as this case,

this court abstained from deciding the Fourteenth Amendment issues. There, it seemed that the plaintiffs were aggrieved by the alleged narrowness of their right to challenge absentees under P.L. 375 only insofar as they were thereby prevented from challenging vacationers and their spouses on the ground that they were not qualified absentee electors under the Pennsylvania Constitution. Consequently, we abstained from deciding the federal questions relating to the alleged narrowness of the challenge procedure until the parties received a decision in the state courts as to whether P.L. 375 violated the Pennsylvania Constitution.

■ Plaintiffs proceeded to raise this issue in the state courts, but those courts did not definitively decide it.[6] However, since the proof in this case has indicated that even if plaintiffs were to prevail on the state constitutional issue they would still find the "narrowness" of the challenge procedure objectionable and harmful,[7] we will consider at this time plaintiffs' federal claims.

## A. EQUAL PROTECTION

Plaintiffs allege that the immunity of absentee voters from "proper challenge" prejudices them as members of a particular class of voters, *i. e.*, registered and enrolled Democrats voting at the polls. It seems clear that a political party is benefited by the right to challenge votes. Thus, were Pennsylvania to accord one political party a greater right to challenge votes than it accorded to another party, *e. g.*, "Republicans may challenge votes, but Democrats may not," it would have to justify this variation in treatment—and would have grave difficulty doing so.

6. The Supreme Court of Pennsylvania decided, in accord with the lower court decision, that the plaintiffs lacked standing to raise the state constitutional issue. Kauffman v. Osser, 271 A.2d 236 (Pa. Supreme Ct., filed November 12, 1970).

7. For example, they would still desire to, and would allegedly be unable to, challenge absentees on the basis of technical defects in the absentee application. Technical defects include such things as the entry of an incorrect date of birth on the application form.

Plaintiffs contend that Pennsylvania has, in effect, accorded a more extensive right to challenge to Republicans than to Democrats. They first aver that the total number of votes cast for Democrats at the polls exceeds the total number of Republican ballots cast at the polls. Then, working on the assumption that the number of votes that can be successfully challenged varies directly and progresses arithmetically with the number of votes cast, plaintiffs conclude that where the Republicans can benefit from challenges there is an adequate challenge procedure.[8] Conversely, where the Democrats will benefit from challenges, i. e., challenges to absentee votes, an inadequate challenge procedure is provided. Plaintiffs argue that there is no justification for this difference in treatment, i. e., the $10 deposit and other restrictions on absentee challenges are not rationally related to a permissible state purpose, and all that really exists is a cleverly disguised system to discriminate against Democrats.[9] In support of this argument the plaintiffs have shown that in the election of 1969 the Democratic candidate for statewide office received a higher vote total at the polls than he did by absentee ballot in Philadelphia County, and that the Republican candidate fared better by absentee ballot than he did at the polls in Montgomery County. This proof is defective in that, inter alia, (1) we are unable to infer from it that more absentee ballots which might, in hindsight, be successfully challenged are cast for non-Democrats, and (2) even if we were able to infer this, we would be unable to infer that the fact that non-Democrats outpolled Democrats by absentee in Philadelphia and Montgomery Counties reflects a pattern which exists either throughout the Commonwealth or in the state or federal legislative voting districts in which plaintiffs vote.[10] Accordingly, we deny relief on plaintiffs' equal protection claim.

## B. DUE PROCESS

Article 1, sec. 2, of the United States Constitution provides that:

"The House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."

Similary, the Seventeenth Amendment of the Constitution provides that electors of Senators " * * * shall have the qualifications requisite for electors of the most numerous branch of the State legislatures." Thus, the right to vote in federal elections is not definitely conferred on any person or class of persons by the Constitution alone; rather, it is necessary to look to the law of the state for the description of the class. Ex Parte Yarbrough, 110 U.S. 651, 4 S. Ct. 152, 28 L.Ed. 274 (1884). However, once the class of persons is ascertained, a qualified individual's right to vote for a member of Congress is fundamentally based on the Constitution. Id.; Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964).

This right to vote is fundamental. E. g., McDonald v. Board of Election, etc., 394 U.S. 802, 806, 807, 89 S. Ct. 1404, 22 L.Ed.2d 739 (1969). As the Court said in Wesberry v. Sanders, 376 U.S. 1, 17, 84 S.Ct. 526, 535, 11 L.Ed.2d 481 (1964):

" * * * Not only can this right to vote not be denied outright, [United States v. Mosley, 238 U.S. 383, 35 S.

---

8. For example, the ten dollar deposit fee does not apply to challenges to ballots cast at the polls.

9. Plaintiffs at no point argue that they are aggrieved by the restrictive features of P.L. 375 in that they thereby have less of an opportunity to challenge absen-

tees than any other class of persons has. For example, they never argue that another class is able to pay the ten dollar deposit fee and challenge absentees.

10. In fact, there had been no evidence in this case as to the voting districts in which plaintiffs vote.

Ct. 904, 59 L.Ed. 1355 (1915); Ex Parte Yarbrough, 110 U.S. 651, 4 S. Ct. 152, 28 L.Ed. 274 (1884)], it cannot, consistently with Article I, be destroyed by alteration of ballots, see United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, or diluted by stuffing of the ballot box, see United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. * * *"

Plaintiffs, relying primarily on United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1944), contend that the counting of absentee ballots cast by persons not entitled to vote by absentee dilutes their vote and constitutes a taking violative of the Constitution.

■ In order to decide this case, we focus on three types of ballots which offend the Pennsylvania electoral system: first, fraudulent ballots which do not represent the choice of the purported voter; second, ballots of voters who fail to meet the standards Pennsylvania has established " * * * to promote intelligent use of the ballot," Lassiter v. Northampton County Bd. of Elections, 360 U.S. 45, 51, 79 S.Ct. 985, 990, 3 L.Ed. 2d 1072 (1959); [11] third, ballots of electors who meet the above-mentioned standards, but who fail to satisfy the requirements Pennsylvania has established to facilitate the administration of its electoral system.[12] In *Saylor*, stuffing

the ballot-box with forged votes—an act which guaranteed that the electoral count would not represent the will of the people—was found to dilute votes cast by qualified electors in a federal election. We are of the opinion that a similar danger is created, and that a dilution of votes would also occur, insofar as persons not qualified to vote under state standards relating to "intelligent use of the ballot" participate in an election. However, that is not this case: herein there have been no allegations and no proof that persons who are incompetent to vote cast absentee ballots in Pennsylvania.[13] Rather, plaintiffs complain only that P.L. 375 permits voting by persons who have not complied with "administrative" requirements of Pennsylvania for voting by absentee. Though under P.L. 375 some absentee ballots cast by persons not qualified to vote by absentee will be counted, we decide that, since this creates no danger of a government not resting on the will of competent electors who have voted, there is no dilution of plaintiffs' votes. Accordingly we deny relief on plaintiffs' due process claim.

### ORDER

And now, this 20th day of January 1971, it is ordered as follows:

1. Plaintiffs' motion for declaratory judgment declaring unconstitutional 25 Pa.Stat.Ann. §§ 2602(z–3), 3146.1 (Supp.1970) is denied.

2. Plaintiffs' motion for a permanent injunction is denied and judgment is entered for defendants.

---

11. These are standards which, in a broad sense, relate to the *competency* of the person to vote.

12. For example, Pennsylvania requires persons who are competent to vote to register before they are allowed to vote.

13. In fact, though there was extensive testimony as to voting irregularities in the period before the advent of P.L. 375, all such evidence related to the failure of voters to qualify as absentees—and none related to the failure of voters to qualify as competent electors.